

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| LAREDO NATIONAL BANCSHARES, INC., et al., | ) CASE NO. 00 CV 2081 |
| Plaintiffs, | ) JUDGE WELLS |
| vs. | ) RESPONSE TO COMPLAINT |
| | ) WITH JURY TRIAL REQUESTED |
| DONALD E. SCHULZ, | ) |
| Defendant. | ) |

I, Donald E. Schulz, respond to the Complaint as follows:

1. I do reside in this district.

2. I do have expertise on Latin American military affairs.

3. In 1999, I was a civilian research professor at the Strategic Studies Institute of the U.S. Army War College in Carlisle, Pennsylvania working on military and national security policy issues including a research project entitled "Narcopolitics in Mexico." I am now Chairman of the Political Science Department at Cleveland State University in Cleveland, Ohio.

4. NDIC is an agency within the United States Department of Justice and is located in Johnstown, Pennsylvania.

5.  NDIC had been working on a project involving the Hank family of Mexico in connection with reputed drug trafficking and money laundering activities. The project was dubbed Operation White Tiger. An executive summary of the project was prepared and was marked as "Law Enforcement Sensitive."

6.  On May 31, 1999 and June 2, 1999, newspaper articles appeared in El Financiero and The Washington Post, respectively, that contained information like that contained in NDIC's executive summary.

7.  As part of my work at the Strategic Studies Institute, I did communicate with journalists, including Dolia Estevez.

8.  In 1998, I did meet with NDIC employees, Daniel Huffman, Margaret Potter and Ron Strong. This meeting was arranged by another NDIC employee, Robert Collins. The purpose of the meeting was to assist me in my work at the Strategic Studies Institute.

9.  About November 1998, I did send a copy of my draft manuscript entitled "Narcopolitics in Mexico" to Daniel Huffman for purposes of NDIC review and comment. In March or April 1999, Mr. Huffman returned my manuscript with comments and sent me a copy of the Operation White Tiger executive summary, which I had requested in order to determine if NDIC's work would assist me in my research.

10. Before changing jobs, I was interviewed by OIG employees and told them that I had received the NDIC executive summary from Mr. Huffman, which I had not entirely read; that I had not disseminated the executive summary; that I was aware, through

The Washington Post article, of Ms. Estevez' article, which I had not read; and that I had periodic communications with Ms. Estevez. I did refuse a requested polygraph examination as is my right.

11. I am not guilty of any of the claims as alleged or for the purposes as alleged, and I am not responsible for any of the alleged damages.

12. With respect to all other Complaint allegations, I do not have enough information to know whether they are factually accurate.

13. In my defense, I must say that:

    a. These claims do not seem to be timely under whatever statutes of limitation exist;

    b. The claims are not legally viable;

    c. The proper people do not seem to be parties, e.g. one or more Hank family members;

    d. I have not conspired with anyone and have not engaged in any "racketeering" activities;

    e. I did not "steal" the executive summary;

    f. I did not use the U.S. mail or wire services or interstate commerce to defraud anyone;

    g. The fraud allegations seem to refer to the rights of the U.S. government, not the Plaintiffs;

h. The alleged Ohio laws would not seem to apply to my work in Pennsylvania;

i. I have no knowledge of Plaintiffs' business relations;

j. My actions were justified;

k. The Plaintiffs would seem to be in the public eye subject to fair comment or of public interest;

l. NDIC's Operation White Tiger project and its executive summary as well as the news reports apparently relying on it should be truthful given the apparently extraordinary resources and time devoted to all of the investigations done by the numerous agencies involved;

m. I had no input into the new reports' content;

n. I have acted in good faith;

o. The U.S. Army's authority or my job responsibilities should insulate me from the allegations;

p. My actions were part of my job responsibilities as a U.S. government employee working on military and national security policy issues;

q. I had a "Top Secret" clearance and a "need to know" as part of my job at the Strategic Studies Institute of the U.S. Army War College;

r. NDIC's executive summary was not a classified U.S. government document;

s. I do not believe that a national bank or a corporation or the officers of either can be defamed or have a right to privacy;

t. I made no publication to the public at large;

u. The alleged information was already publicized;

v. The Plaintiffs have been found guilty of violating federal law;

w. As an individual, I should not be subject to federal privacy laws;

x. As a Strategic Studies Institute employee, I was not governed by Department of Justice or NDIC rules, regulations, policies, procedures or the like; and

y. I view this Complaint as a frivolous and venomous attack on me as a government employee assigned to do analytical research for military and national security issues. It is in violation of my First Amendment rights and other rights, and is further an attempt to unlawfully silence legitimate academic research, journalistic reporting and governmental intelligence gathering. I have been damaged in my reputation and pocketbook, as well as emotionally. Consequently, I ask for damages from the court or jury against Plaintiffs and/or their lawyers.

*Donald E. Schulz*
Donald E. Schulz, Defendant
39126 Detroit Road
Avon, Ohio 44011

## CERTIFICATE OF SERVICE

I have mailed a copy of this Response to Complaint to the Plaintiffs' attorney, Patrick M. McLaughlin, Esq., McLaughlin & McCaffrey, LLP, Eaton Center, 1111 Superior Avenue, Suite 1350, Cleveland, Ohio 44114-2500.

_____
Donald E. Schulz, Defendant

_14 November 2000_____
Date