## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| LADREDO NATIONAL BANCSHARES, INC., et al., | ) ) ) | CASE NO. 1:00CV2081 |
| Plaintiffs, | ) ) | JUDGE WELLS |
| vs. | ) ) ) ) | DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS |
| DONALD E. SCHULZ, | ) ) | COUNTERCLAIM |
| Defendant. | ) | |

### I. PRELIMINARY STATEMENT

Defendant's Counterclaim should not be dismissed because, while couched in layman's terms, it does place the plaintiffs on notice, under the notice pleading standards, of the claims against them.  Under F.R.C.P. 8(a), Dr. Schulz' Counterclaim need merely contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Counterclaim's allegations meet that standard and set forth claims for relief based upon abuse of process, frivolous conduct, intentional infliction of emotional distress and defamation.  The factual background that Dr. Schulz proposes to develop and present at trial is critical to understanding the validity of the claims set forth in the Counterclaim.

## II.  FACTUAL BACKGROUND

The plaintiffs allege that Dr. Donald Schulz, currently the Political Science Department Chairman at Cleveland State University, while employed as a civilian research professor at the United States Army War College Strategic Studies Institute, obtained and leaked to the press a draft executive summary of the National Drug Intelligence Center's Operation White Tiger project, which was a vast study of hundreds of thousands of documents generated by other governmental agencies who through intelligence gathering had compiled numerous studies on drug trafficking and money laundering into the United States through Mexico with the focus being the Hank family of Mexico.  Allegedly as the result of Dr. Schulz' media leak, articles appeared in two publications, El Financiero and The Washington Post on May 31, 1999 and June 2, 1999, respectively.  The El Financiero article mentions in passing one plaintiff, Gary Jacobs, in passing who as the president of The Laredo National Bank, "...lacks the personal resources to have been able to acquire the shares he owns in the bank."[1]  The Washington Post article mentions plaintiff, Laredo National Bancshares, Inc., by stating that Carlos Hank Rhon bought shares in this bank holding company in order to extend the Hank family business interests from Mexico to the United States.[2]  The focus of these two articles and others that followed is the Hank family and its reputed ties to illicit activity.  The plaintiffs herein are, as stated above, referenced

---

[1]  See Complaint, Exhibit C.

[2]  See Complaint, Exhibit E.

only in passing in a few of the news articles published on or after May 31, 1999 and are not mentioned at all in most of the articles.

Also referenced in the Complaint is another news article published much earlier than the El Financiero and The Washington Post articles. On March 29, 1999, Insight Magazine published a strikingly similar article discussing NDIC's Operation White Tiger that was, according to the article's author, based upon United States law enforcement documents leaked to the magazine along with other confidential sources.[3]  In discussing the Hank family's reputed links to drug trafficking, the article references the Hank family-owned Texas banks.[4]

Central to the Counterclaim herein is a timing issue. When did Dr. Schulz receive the NDIC draft executive summary?  According to NDIC, the executive summary accompanied a letter <u>dated</u> March 25, 1999 addressed to Dr. Schulz.[5]  The date on the March 25 letter is not indicative of the date it was mailed or the date it was received.  <u>In fact, Dr. Schulz did not receive that letter until March 29, 1999 at the earliest</u>. Consequently, Dr. Schulz could not possibly be the source of leaked U.S. government documents referenced in the Insight Magazine article that hit the newstands on March 29, 1999.  Obviously, the Insight article's author needed significant time to research, write and

---

[3]  See Complaint, Exhibit D.

[4]  *Id.*

[5]  See Complaint, Exhibit G, p. 4.

edit the article before even submitting it to the magazine for publication. Consequently, the defamation complained of by the plaintiffs had already been published nationwide before Dr. Schlulz ever got his hands on NDIC's executive summary.

So why sue Dr. Schulz, a life-long academic of modest means, for allegedly defaming the plaintiffs when they had already been the subject of the very same alleged defamation?  The answer lies within the Counterclaim's allegations.  This lawsuit is not a good faith effort to recoup money damages, but rather is an effort to harass, intimidate and squelch legitimate academic and governmental research and fair news reporting.  This lawsuit has forced Dr. Schulz to exhaust his meager finances, expend significant personal time and effort, and has caused him severe emotional distress and loss of reputation.  This case is an abuse of process, sanctionable, emotionally distressful and defamatory.

### III.  LAW AND ARGUMENT

A. <u>Abuse of Process/Sanctions</u>

Under Ohio law, "[t]he three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process."[6] Dr. Schulz contends that the plaintiffs have the ulterior motives of intimidation

---

[6] *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294 (1994).

and harassment as the purpose of this suit and that damage to his finances, emotional state and reputation are a direct result of this abuse of process.

Additionally, Ohio Revised Code §2323.51 governs frivolous conduct and states that by motion, appeal or the court's own initiative, the court may bring a hearing to determine if conduct engaged in during the proceedings is frivolous and may award the wronged party attorney's fees. "Frivolous conduct" includes conduct that "serves merely to harass or maliciously injure another party in a civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation." Ohio Revised Code §2323.51 (A)(2)(a)(i). Both this substantive statute and the abuse of process doctrine may be stated as part of a counterclaim.[7] Therefore, Dr. Schulz contends that his Counterclaim is well-taken since the Complaint and all of the proceedings and processes thereafter constitute abusive and frivolous conduct, and the Counterclaim's allegations of intentional infliction of emotional distress, defamation and infringement of First Amendment rights flow from this conduct.

B.      Intentional Infliction of Emotional Distress

Dr. Schulz has also met the elements of intentional infliction of severe emotional distress set forth in *Tschantz v. Ferguson*, 97 Ohio App.3d 693, 702 (1994). In other words, the plaintiffs intended to cause Dr. Schulz emotional distress by filing and pursuing this case for ulterior motives other than those permitted by law, have used their wealth and

---

[7] *Yaklevich,* 68 Ohio St. 3d @ 298.

5

power in an effort to bring Dr. Schulz to financial and emotional ruin that is outrageous and intolerable in a civilized society, have proximately caused Dr. Schulz severe distress as a result of the financial and emotional strain upon him personally and professionally, and Dr. Schulz' emotional distress is so severe that no reasonable individual should be expected to endure it.[8]

C.  Defamation

Just as the plaintiffs claim that Dr. Schulz has defamed them, Dr. Schulz contends that as a result of publicity sought by the plaintiffs, statements made by or on their behalf either orally or in writing have caused damage to Dr. Schulz' reputation. Seeking to avoid liability, the plaintiffs argue that statements made in a judicial proceeding "generally" enjoy "an absolute privilege" if those statements relate to the proceeding.[9] The word "generally" acknowledges exceptions to the rule, and Dr. Schulz contends that suits brought merely to intimidate or harass, such as this one, are excepted from the general rule.[10] Consequently, Dr. Schulz has been defamed since the plaintiffs have falsely claimed that Dr. Schulz defamed them to their damage, have made statements to the media and others regarding Dr. Schulz' alleged wrongdoing, have failed to sufficiently research the initial leak and the

---

[8] See Plaintiffs' Motion to Dismiss Counterclaim @ p.4.

[9] Plaintiffs' Motion to Dismiss Counterclaim @ p. 6 (properly numbered).

[10] See Ohio Revised Code §2323.51, Rule 11 Sanctions, and abuse of process discussion, *supra.*

party(ies) responsible for it, and have caused Dr. Schulz special harm by exposing him to severe personal, financial and emotional detriment. Thereby, Dr. Schulz has demonstrated a *prima facia* defamation claim.[11]

D.    <u>First Amendment Abuse</u>

Through misuse of the courts, the plaintiffs are seeking to silence unfavorable research and press relating to their interests and the interests of the Hank family, in particular Carlos Hank Rhon. By so doing, under the guise of legal proceedings, their intention is to infringe upon the First Amendment rights of Dr. Schulz and all those similarly situated. Use of the legal process for the sole purpose of silencing critics is not a good faith use of our judicial system. So while the general rule may only allow for suit against the federal and state government for infringement of First Amendment rights, this suit is an abuse of process thereby entitling Dr. Schulz to assert violation of his First Amendment rights as part of that claim.

<u>IV. Conclusion</u>

In order for a motion to dismiss to be granted, the claim sought to be dismissed must not be supportable by <u>any set of facts</u>. Under that standard, and the facts proffered herein,

---

[11] *Jackson v. City of Columbus,* 194 F. 3d 737, 757 (6th Cir. 1999).

Dr. Schulz' Counterclaim is viable and Plaintiffs' Motion to Dismiss should be denied.

    Respectfully submitted,

    s/ Philip J. Weaver, Jr.
    Philip J. Weaver, Jr. (0025491)
    Smith, Marshall, Weaver & Vergon
    500 National City-E. 6th Bldg.
    1965 East 6th Street
    Cleveland, Ohio 44114
    (216) 781-4994

    Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2001 a copy of the foregoing Defendant's Memorandum in Opposition to Plaintiffs' Motion to Dismiss Counterclaim was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. In addition, a copy of the foregoing document was served by first class U.S. mail, postage prepaid, this 27th day of July, 2001 upon Patrick M. McLaughlin, Esq., Attorney for Plaintiff, McLaughlin & McCaffrey, LLP, Eaton Center, 1111 Superior Avenue, Suite 1350, Cleveland, Ohio 44114-2500.

    s/ Philip J. Weaver, Jr.
    Philip J. Weaver, Jr.