**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

LAREDO NATIONAL     )
BANCSHARES, INC., *et al.*,   )  CASE NO.  1:00 CV 2081
            )
     Plaintiffs,   )  JUDGE LESLEY WELLS
            )
v.           )
            )  MAGISTRATE JUDGE VECCHIARELLI
DONALD E. SCHULZ, *et al.*,   )
            )  **REPORT AND RECOMMENDATION**
     Defendants.   )

   Pending before the undersigned United States Magistrate Judge is defendant Donald E.

Schulz's ("Schulz") Motion to Add New Party Plaintiff.  (Doc. No. 38.)  Judge Wells referred this

matter on July 27, 2001 for a report and recommendation.  (Doc. No. 52.)  For the reasons set out

more fully below, Schulz's motion should be DENIED.

**Factual Background**

   On August 15, 2000, plaintiffs filed an eight count Complaint based upon the following

summary of allegations:

     This action arises out of a series of unlawful acts and schemes by
     defendant, and others, to cause incalculable injury to plaintiffs.  The

plaintiffs are Laredo National Bancshares, Inc. ("LNBI"), The Laredo National Bank ("LNB"), and Gary G. Jacobs, President and CEO of LNBI and Chairman, President, and CEO of LNB.  The defendant Schulz, and others unknown at this time, caused false and fictitious information to be conveyed to, and incorporated into, a Department of Justice predecisional, draft drug intelligence document containing unsubstantiated, hearsay allegations against plaintiffs.

The defendant and others infiltrated the Department of Justice National Drug Intelligence Center ("NDIC") and corrupted the NDIC's "Operation White Tiger Project" in furtherance of the defendants' political and financial interests, which has and continues to cause plaintiffs catastrophic injuries.

Operation White Tiger is one of the most ambitious and expensive undertakings in the U.S. government's war on drugs and drug traffickers.  It is the culmination of 56 separate Drug Enforcement Administration ("DEA") criminal investigations; 28 separate Federal Bureau of Investigation ("FBI") criminal investigations; 19 separate U.S. Customs Service ("USCS") criminal investigations; 140 Internal Revenue Service ("IRS") and Financial Services Task Force criminal investigations; and numerous Central Intelligence Agency ("CIA"), Defense Intelligence Agency ("DIA") and other criminal investigations.

Operation White Tiger's purpose is to eradicate the drug trafficking and money laundering responsible, reportedly, for the flow of about 70% of the cocaine and 18% of the heroin into the United States.

The defendant and others infiltrated NDIC's Operation White Tiger Project in May 1998 and deceptively corrupted the NDIC's $750,000 Operation White Tiger "Blueprint," an 800-page tactical and strategic prosecutorial road-map including organizational link charts and graphs, the draft of which was ready on May 25, 1999 for the highest-level U.S. law enforcement review and vetting.  The U.S. government's multi-agency White Tiger Task Force was poised to launch its assault on drug trafficking kingpins using the NDIC's Operation White Tiger "Blueprint."  To facilitate review and top-level vetting of the draft 800-page "Blueprint," NDIC staff composed a March 12, 1999 "draft White Tiger Executive Summary" consisting of 19 pages, which was to be carefully reviewed and vetted prior to its internal distribution.

2

The defendant and others had, since May 1999, covertly corrupted the compilation and preparation of the May 25, 1999 draft 800-page Operation White Tiger "Blueprint" and March 12, 1999 draft White Tiger executive summary by deceptively infecting NDIC's Operation White Tiger Project with disinformation and flat-out lies to further the political and financial interests of the defendants and others.  Among such lies are the false and spurious targeting of LNBI, LNB, the President of LNB Mr. Jacobs, LNBI's Chairman, and Mexico's respected Hank family as being the leaders of a "gang," posing a "criminal threat to the United States," and facilitating the flow of about 70% of the cocaine and 18% of the heroin into the United States and money laundering that operation White Tiger was intended to eradicate.

Before the March 12, 1999 draft White Tiger executive summary had been "properly reviewed" and vetted as required by NDIC policy, on March 25, 1999, Defendant Schulz fraudulently obtained one of the "few copies of this draft report that had been prepared as part of the review and editing process."  The theft of the draft March 12, 1999 White Tiger executive summary and the corruption of the Operation White Tiger Project by the defendant and others was unknown to the Department of Justice when the full 800-page draft Operation White Tiger "Blueprint" was completed by May 25, 1999 just days before U.S. Attorney General Janet Reno led the United States delegation (including White House "Drug Czar" General Barry McCaffrey, the Secretaries of the Interior, Transportation, Commerce and Housing and numerous other high ranking U.S. officials) at the United States/Mexico Bi-national Commission in Mexico City.

The defendant and others distributed the stolen draft March 12, 1999 White Tiger executive summary to selected reporters for the U.S. national press and international media for systematic publication of the disinformation and life-shattering lies planted in the classified NDIC Operation White Tiger draft reports.  The defendants and others intended that these systematic publications and the resulting deceptive media smear campaign ambush Attorney General Reno and the U.S. delegation upon their arrival in Mexico on or about June 2, 1999 for the U.S./Mexico Bi-national Commission Meeting and irreparably injure plaintiffs, LNBI's Chairman and the Hank Family.  Just as the American delegation was arriving in Mexico, a front page *The Washington Post* article headlined the disinformation and lies planted by the defendant and others in the March 12, 1999 draft White Tiger

executive summary they stole and secretly distributed.  As Attorney General Janet Reno later explained to former Senator Warren Rudman:

> When the draft report was quoted in press accounts . . . I responded to queries from the press, advising them that the draft report had not been properly reviewed and that I could not endorse its conclusions as reported by the media.  I also cautioned against relying on only fragmentary reports such as had appeared in the media regarding this draft . . .

Mexican Secretary of State Rosario Green publicly responded to the smear campaign by demanding that the Clinton Administration hand over "any proof of [the] charges."  White House "Drug Czar" McCaffrey directly and publicly responded by telling reporters that he did not have any information on the Hank family that was worth taking to Mexican authorities.  Indeed, General McCaffrey added in another interview that *The Washington Post* and *El Financiero* articles are simply "not true" . . . and "[w]e are vigorously prosecuting people in the United States and if we have concerns about Mexican individuals we provide evidence from our Attorney General to Mexico's requesting prosecution or extradition . . . It seems inexcusable to defame [LNB, Gary Jacobs and the Hank Family] in public.

The criminal acts and schemes of the defendant and others continues.  The damage to plaintiffs has been done; it is irrevocable, profound, and life-shattering.  Moreover, the defendants' crimes have not only victimized their direct targets - plaintiffs - but also interfered with, delayed and jeopardized the U.S. Government's legitimate law enforcement efforts to combat drugs, drug trafficking, and money laundering.  Nearly a year later, Attorney General Reno on March 21, 2000 documented that NDIC's Operation White Tiger Project (i.e., the 800 page "Blueprint" and 19 page "executive summary") "remain[s] in draft, and therefore, have not been adopted as official views and positions of the NDIC, Department of Justice, and the various Federal, state and local law enforcement and regulatory authorities."  The reason: America's Operation White Tiger law enforcement initiative to eradicate the reportedly 70% of the cocaine and 18% of the heroin flooding into America is bogged-down, now more than a year after the defendant and others publicly victimized plaintiffs, is a direct and foreseeable consequence of the criminal acts and schemes by the defendants and others to infiltrate NDIC and corrupt NDIC's

4

Operation White Tiger Project.

The damages to LNBI and LNB are catastrophic, outrageous and lasting.  The personal and reputational injuries to Mr. Jacobs - an internationally prominent banker with unassailable integrity - are life-shattering.

## The Parties

Laredo National Bancshares, Inc., is a blemish-free bank holding company that owns the 108-year old The Laredo National Bank and the South Texas National Bank of Laredo.  LNBI is a highly successful financial services organization that has and continues to be instrumental to the growth of Texas.  LNBI's banks have consistently been considered among the best managed and strongest in Texas by the Office of the Controller of the Currency ("OCC"), and are recognized for providing banking service to traditionally under-served segments of south Texas consumers.  LNBI is a Delaware and Texas corporation and LNB is a national association pursuant to regulations of the U.S. Treasury.

Gary G. Jacobs is the long-time President and CEO of LNBI, and the Chairman, President and CEO of LNB.  He is a nationally-respected banking executive residing in Laredo, Texas.  Because of Mr. Jacobs' long association with LNB, he has become the personification of LNB in the eyes of many in south Texas, Mexico, and in the national banking community.  Mr. Jacobs brings suit in both his personal and official capacities.

Carlos Hank Rhon, an interested non-party, is an internationally-respected Mexican businessman and investor, who has worked hard to build successful joint ventures in Mexico with internationally respected businesses such as Daimler-Benz, ABB-a European multinational corporation, Mitsubishi Heavy Industries, General Motors, AES (based in Virginia), and others.  Mr. Hank Rhon is Chairman of the Board and the controlling shareholder of LNBI.  In the last ten years as LNBI's Chairman, Mr. Hank Rhon's leadership has made LNBI one of the leading American/Mexican banking institutions.  Mr. Hank Rhon is known internationally as a person of impeccable integrity; he has never been indicted, prosecuted, or convicted of any crime either in the U.S. or Mexico.  Mr. Hank Rhon is the eldest son of Carlos Hank Gonzalez,

5

a pre-eminent Mexican businessman, politician and philanthropist.

Defendant, Donald Schulz represents himself to be an expert on military affairs involving Latin American countries.  He has publicly touted a book entitled "Narcopolitics in Mexico" on which he is working.  Until the latter months of 1999 Schulz was a civilian research professor of national security policy at the Strategic Studies Institute of the U.S. Army War college in Carlisle, Pennsylvania.  Schulz is now Chairman of the Political Science Department at Cleveland State University in Cleveland, Ohio.  Schulz self-promotes his connections to "media outlets such as *The Washington Post*" and others.

(Complaint, pp. 2-8) (citations omitted).

In answering the Complaint, Schulz acknowledged that he has expertise on Latin American military affairs and further stated

In 1999, I was a civilian research professor at the Strategic Studies Institute of the U.S. Army War College in Carlisle, Pennsylvania working on military and national security policy issues including a research project entitled "Narcopolitics in Mexico." I am now Chairman of the Political Science Department at Cleveland State University in Cleveland, Ohio.

NDIC is an agency within the United States Department of Justice and is located in Johnstown, Pennsylvania.

NDIC had been working on a project involving the Hank family of Mexico in connection with reputed drug trafficking and money laundering activities. The project was dubbed Operation White Tiger. An executive summary of the project was prepared and was marked as "Law Enforcement Sensitive."

On May 31, 1999 and June 2, 1999, newspaper articles appeared in *El Financiero* and *The Washington Post*, respectively, that contained information like that contained in NDIC's executive summary.

As part of my work at the Strategic Studies Institute, I did communicate with journalists, including Dolia Estevez.

6

In 1998, I did meet with NDIC employees, Daniel Huffman, Margaret Potter and Ron Strong. This meeting was arranged by another NDIC employee, Robert Collins.  The purpose of the meeting was to assist me in my work at the Strategic Studies Institute.

About November 1998, I did send a copy of my draft manuscript entitled "Narcopolitics in Mexico" to Daniel Huffman for purposes of NDIC review and comment.  In March or April 1999, Mr. Huffman returned my manuscript with comments and sent me a copy of the Operation White Tiger executive summary, which I had requested in order to determine if NDIC's work would assist me in my research.

Before changing jobs, I was interviewed by OIG employees and told them that I had received the NDIC executive summary from Mr. Huffman, which I had not entirely read; that I had not disseminated the executive summary; that I was aware, through *The Washington Post* article, of Ms. Estevez' article, which I had not read; and that I had periodic communications Ms. Estevez. I did refuse a requested polygraph examination as
is my right.

I am not guilty of any of the claims as alleged or for the purposes as alleged, and I am not responsible for any of the alleged damages.

(Amended Answer and Counterclaim, pp. 1-3.)

On June 1, 2001, Schulz filed a motion to add Carlos Hank Rhon as a new party plaintiff pursuant to either Rule 19, 20, or 21 of the Federal Rules of Civil Procedure ("Rule").  (Doc. No. 38.) Plaintiffs filed a Brief in Opposition (Doc. No. 43) on June 26, 2001 and Schulz filed a Reply (Doc. No. 44) on July 5, 2001.  Judge Wells granted plaintiffs' request to file a Sur-Reply, which they filed (Doc. No. 50) on July 26, 2001.

**Analysis**

Schulz argues that Carlos Hank Rhon should be joined as a new party plaintiff to this suit pursuant to either Rule 19, Rule 20, or Rule 21.

7

## I.      Rule 19

Schulz first argues that Hank Rhon should be joined as a new party plaintiff under Rule 19

which provides:

> **(a) Persons to be Joined if Feasible.**  A person who is subject to
> service of process and whose joinder will not deprive the court of
> jurisdiction over the subject matter of the action shall be joined as a
> party in the action if (1) in the person's absence complete relief cannot
> be accorded among those already parties, or (2) the person claims an
> interest relating to the subject of the action and is so situated that the
> disposition of the action in the person's absence may (i) as a practical
> matter impair or impede the person's ability to protect that interest or
> (ii) leave any of the persons already parties subject to a substantial risk
> of incurring double, multiple, or otherwise inconsistent obligations by
> reason of the claimed interest.  If the person has not been so joined, the
> court shall order that the person be made a party.  If the person should
> join as a plaintiff but refuses to do so, the person may be made a
> defendant, or, in a proper case, an involuntary plaintiff.  If the joined
> party objects to venue and joinder of that party would render the venue
> of the action improper, that party shall be dismissed from the action.

Schulz argues that Hank Rhon should be joined in this litigation as a plaintiff because his interests are

closely aligned with, if not identical to, those of the current plaintiffs.  However, Schulz has not met the

prerequisites for joining Hank Rhon as an involuntary party pursuant to Rule 19.

Rule 19 requires that the person to be joined as a party plaintiff, after being asked, refused to

join the litigation voluntarily.  *See Independent Wireless Tel. Co. v. Radio Corp. of America*, 269

U.S. 459, 473 (1926); *In re Interstate Motor Freight Sys. IMFS, Inc.*, 71 B.R. 741, 746 (W.D.

Mich. 1987) (quoting *Dubin Water Co. v. Delaware River Basin Comm'n*, 443 F. Supp. 310, 315

(E.D. Pa 1977)); *Valutron, N.V. v. NCR Corp.*, 99 F.R.D. 254, 257 (S.D. Ohio 1982); *Babcock v.

Maple Leaf, Inc.*, 424 F. Supp. 428, 431 n.2 (E.D. Tenn. 1976); *Promatek Indus., LTD v. Equitrac*

8

*Corp.*, 185 F.R.D. 520, 522 (N.D. Ill 1999); *Hicks v. Intercontinental Acceptance Corp.*, 154

F.R.D. 134, 135 (E.D.N.C. 1994) (citing *Sheldon v. West Bend Equip. Corp.*, 718 F.2d 603, 606

(3rd Cir. 1983)); 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 1606 n.7 (3d ed. 2001).  Schulz has not asked Hank Rhon to join this litigation.

Additionally, the person to be joined under Rule 19(a) must be subject to service of process.

Here, Hank Rhon is not subject to service of process by this Court.  *See infra*, III.

Further, Schulz does not meet the criteria for joinder under either Rule 19(a)(1) or 19(a)(2).  In

order for compulsory joinder under Rule 19(a)(1) to apply, complete relief cannot be accorded to

those already parties in the absence of the person to be joined.  Here, Schulz does not contend that

Hank Rhon's presence is necessary for complete relief to be afforded the existing parties.  It appears

from the pleadings that complete relief for plaintiffs' claims can be afforded among the current parties

because plaintiffs do not assert claims against Hank Rhon, and Schulz does not assert any claims that

require Hank Rhon's presence as a party to the suit.  Schulz's counterclaim asserts that the instant

lawsuit filed by the current plaintiffs violates his constitutional rights and seeks damages from the

plaintiffs and their attorneys.  There are no claims pending in this case that require the joinder of Hank

Rhon to effectuate the complete relief requested.  *See Southern Co. Energy Mktg., L.P. v. Virginia

Elec. and Power Co.*, 190 F.R.D. 182, 186 (E.D. Va. 1999).

Alternatively, Rule 19(a)(2) requires that "the person claims an interest relating to the subject of

the action and is so situated that the disposition of the action in the person's absence may (i) as a

practical matter impair or impede the persons' ability to protect that interest or (ii) leave any of the

persons already parties subject to a substantial risk of incurring double, multiple, or otherwise

inconsistent obligations by reason of the claimed interest." Rule 19(a)(2). Schulz contends, in a

conclusory statement offered without any evidentiary support or legal authority on point,[1] that if Hank

Rhon is not joined as a party to this lawsuit, Schulz will be exposed to "multiple, inconsistent *outcomes*

should Hank Rhon later bring suit against" Schulz. (Defendant's Motion to Add New Party Plaintiff,

unnumbered p. 5 - emphasis added.) This allegation ignores the distinction between "inconsistent

obligations" as contemplated by Rule 19 and "inconsistent adjudications or results" referred to by

Schulz. *See Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984).

> "Inconsistent obligations" are not, however, the same as inconsistent
> adjudications or results. Inconsistent obligations occur when a party is
> unable to comply with one court's order without breaching another
> court's order concerning the same incident. Inconsistent adjudications
> or results, by contrast, occur when a defendant successfully defends a
> claim in one forum, yet loses on another claim arising from the same
> incident in another forum. Unlike a risk of inconsistent obligations, a
> risk that a defendant who has successfully defended against a party may
> be found liable to another party in a subsequent action arising from the
> same incident - - i.e., a risk of inconsistent adjudications or results - -
> does not necessitate joinder of all of the parties into one action pursuant
> to Fed. R. Civ. P. 19(a). Moreover, where two suits arising from the
> same incident involve different causes of action, defendants are not
> faced with the potential for double liability because separate suits have
> different consequences and different measures of damages.

---

[1] The one case cited by Schulz, *House v. Mine Safety Appliances Co.*, 573 F.2d 609, 622 (9th Cir. 1978) (*overruled on other grounds by Warren v. U.S. Dept. of Interior Bureau of Land Mgmt.*, 724 F.2d 776 (9th Cir. 1984)), is distinguishable on its facts as it discusses adding a party over whom the courts of the Ninth Circuit had jurisdiction. This court does not have jurisdiction over Hank Rhon. Further, the claims against the party sought to be joined were for contribution and indemnity from one who stood in the same position as the original plaintiff.

*Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (citations omitted); *see also Travelers Indem. Co. of Connecticut v. The Losco Group, Inc.*, 150 F. Supp.2d 556, 564-65 (S.D.N.Y. 2001) (citing cases); *Scottsdale Ins. Co. v. Subscriptions Plus, Inc.*, 195 F.R.D. 640, 646 (W.D. Wis. 2000) (citing *Schulman v. J.P. Morgan Inv. Mgmt. Inc.*, 35 F.3d 799, 806 (3rd Cir. 1994)); *Southern Co. Energy Mktg., L.P. v. Virginia Electric and Power Co.*, 190 F.R.D. 182, 186 (E.D. Va. 1999) (citing cases); 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 19.03(4)(d) (ed ed. 1999).  Schulz's bare allegation that a suit by Hank Rhon would result in an inconsistent obligation does not set forth a sufficient ground for joinder under Rule 19(a)(2)(ii).

For the foregoing reasons, joinder of Hank Rhon as an involuntary plaintiff pursuant to Rule 19 is improper and he should not be joined as an involuntary plaintiff pursuant to Rule 19.

## II.    *Rule 20*

Schulz, without citing any legal authority, next argues that Hank Rhon should be joined as a new party plaintiff under Rule 20 which provides:

> **(a) Permissive Joinder.**  All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.  All persons (and any vessel, cargo or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.  A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded.  Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or

11

more defendants according to their respective liabilities.

Plaintiffs contend that Rule 20 cannot be used to add a party plaintiff to a lawsuit against that party's will. The clear language of the Rule supports plaintiff's position. *See Hudson v. Reno*, 130 F.3d 1193, 1199 (6th Cir. 1997) ("A familiar canon of statutory construction is that the starting point for interpreting a statute is the language of the statute itself."). Rule 20 states that all persons "may join" a lawsuit as "plaintiffs if they *assert*" a certain type of action while all persons "may *be joined*" in a lawsuit as defendants if the plaintiff has "*asserted*" a certain type of action against them. Rule 20(a) (emphasis added). The permissive language relating to plaintiffs indicates that the person joining as a plaintiff does so voluntarily, in contrast to the language relating to defendants, which allows a plaintiff to join one or more parties as defendants. This difference in languages indicates that a person actively chooses to join as a plaintiff while a person is joined involuntarily as a defendant. *See Moore v. Cooper*, 127 F.R.D. 422 (D.D.C. 1989) (holding that defendant may not force a party to join lawsuit as a plaintiff under Rule 20(a)).

Second, plaintiffs may join if they "assert" a cause of action. The dictionary defines assert as "to state or declare positively and often forcefully or aggressively" MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 69 (10th ed. 1997), which indicates that a person joining as a plaintiff must be one who already has stated or declared or attempted to state or declare that he or she has a cause of action against the defendant. *See Moore*, 127 F.R.D. 422.

Here, Hank Rhon has not voluntarily joined this lawsuit pursuant to Rule 20 or asserted a cause of action against Schulz. Accordingly, there is no basis for joining Hank Rhon as a party pursuant to

12

Rule 20.

### III.    Rule 21

Schulz also argues that Hank Rhon should be joined as a new party plaintiff under Rule 21

which provides:

> Misjoinder of parties is not ground for dismissal of an action.  Parties
> may be dropped or added by order of the court on motion of any party
> or of its own initiative at any stage of the action and on such terms as
> are just.  Any claim against a party may be severed and proceeded with
> separately.

In order to be joined under Rule 21, the new party must be subject to the jurisdiction of the court

ordering joinder.  *See Carlson v. Glenn L. Martin Co.*, 103 F. Supp. 153, 154 (N.D. Ohio 1952)

(citing *U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 382 (1949)).

To determine if personal jurisdiction exists over a party or proposed party, a federal court must

apply the law of the forum state, as long as that law is within the confines of Constitutional due process

limits.  *See Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), *cert. denied*, 450 U.S. 981 (1981).

The Constitutional due process limits require that (1) the party purposefully avail himself or herself of

the privilege of acting within the forum state or causing a consequence in the forum state, (2) the cause

of action arises from the party's activities within the forum state, and (3) the actions or consequences of

the party must have a substantial enough connection with the forum state to make the exercise of

jurisdiction reasonable.  *See Serras v. First Tenn. Bank Nat'l Assoc.*, 875 F.2d 1212, 1217 (6th Cir.

1989).

Here, plaintiffs argue that Hank Rhon has not purposefully availed himself of acting in the state

13

of Ohio.  In order to purposefully avail oneself of the forum state, the party must deliberately engage in significant activities in the forum state or create continuing obligations to persons within the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).  Plaintiffs assert that Hank Rhon is a Mexican citizen who (1) has never visited Ohio, (2) has not purposefully engaged in significant activities in Ohio, and (3) has not engaged in any  activities in Ohio relating to the subject matter of this lawsuit.  (Plaintiff's Brief in Opposition, p. 6 n. 2.)  Defendant has not presented any evidence to rebut those contentions or demonstrate that this court has jurisdiction over Hank Rhon.  Accordingly, there is no basis upon which this Court could conclude that it has jurisdiction over Hank Rhon.

Therefore, Hank Rhon should not be joined as a party plaintiff in this lawsuit pursuant to Rule 21.  *See Carlson*, 103 F. Supp. at 154.

**Continued on the next page**

**Conclusion**

For the reasons set forth in detail above, the undersigned recommends that defendant Donald

E. Schulz's Motion to Add New Party Plaintiff (Doc. No. 38) be DENIED.


*/s/ Nancy A. Vecchiarelli*

Nancy A. Vecchiarelli

U.S. Magistrate Judge


Date:    August 31, 2001


**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**