UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAREDO NATIONAL BANCSHARES, INC., et al., | ) ) ) | Civil Action No. 1:00-2081 |
| Plaintiffs, | ) ) ) | Judge Lesley Wells<br>Magistrate Judge Nancy Vecchiarelli |
| v. | ) ) | **UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE** |
| DONALD E. SCHULZ, | ) ) | **DECLARATION OF ROGELIO GUEVARA OR, IN THE** |
| Defendant. | ) ) ) ) | **ALTERNATIVE, FOR AN ORDER PERMITTING PLAINTIFFS TO TAKE HIS DEPOSITION** |

The United States hereby opposes Plaintiffs' Motion to Strike the Declaration of Rogelio Guevara or, in the alternative, for an Order Permitting Plaintiffs to Take His Deposition ("Plaintiffs' Motion"). The declaration of Rogelio Guevara ("Guevara decl."), Chief of Operations for the Drug Enforcement Administration ("DEA"), is attached as Exhibit A to the United States' Reply in Further Support of its Motion for Protective Order ("United States' Reply") with respect to the March 12, 1999 draft of the White Tiger Executive Summary ("Executive Summary"). In accordance with the procedure set forth by the United States Supreme Court, the declaration of Mr. Guevara properly effects DEA's formal claim of privilege

over the Executive Summary and provides further support for the United States' request for an Order shielding this document from disclosure. Because a formal claim of privilege can only be made by the head of the agency and Mr. Guevara's declaration is properly based on personal consideration of the contents of the Executive Summary and the relevant facts, plaintiffs' motion to strike based on lack of personal knowledge should be denied. Moreover, plaintiffs should not be permitted to probe behind DEA's assertion of privilege into the very subject matter sought to be protected by taking Mr. Guevara's deposition. According to established procedure for resolving issues of privilege, this matter is ripe for decision. Particularly here, where plaintiffs have failed to make the required showing of need for access to the Executive Summary, the Court can and should rule on the United States' Motion for a Protective Order based on the current record without further delay.

## ARGUMENT

I. **The Declaration of Rogelio Guevara is in Accordance with the Requirements for a Proper Assertion of Privilege and is Amply Based on Personal knowledge and Consideration of the Relevant Facts**

First and foremost, plaintiffs' challenge to the declaration of Rogelio Guevara based on lack of personal knowledge fails completely to account for the well-established requirement that a formal claim of governmental privilege can only be lodged by the head of the agency. See United States v. Reynolds, 345 U.S. 1, 7-8 (1953); Nat'l Lawyers Guild v. Attorney General, 96 F.R.D. 390, 396 n. 10 (the requirements set forth in Reynolds have been "uniformly applied to all governmental privileges."). This requirement is "not merely technical." See Nat'l Lawyers Guild, 96 F.R.D. at 396. Rather, it is designed "to insure that the privilege is claimed by

someone in the executive branch with sufficient authority and responsibility so that the court can rely upon his judgment that the claim was prudently invoked." Id. Linda Morris, a Sargent with the California Police Department who was assigned to the San Diego Financial Task Force by DEA, although knowledgeable about Task Force investigations, lacks the necessary authority to assert a formal claim of privilege on behalf of DEA. Mr. Guevara, DEA's Chief of Operations, is in the proper position of authority to assert the privilege. Plaintiffs' effort to undermine Mr. Guevara's authority to advise the Court on why the Executive Summary is properly subject to privilege is in sheer disregard for this firm rule of law.

Plaintiffs' suggestion that Mr. Guevara is not sufficiently familiar with the subject matter at issue to advise the Court is unwarranted. As is evident in the declaration itself, Mr. Guevara's assertion of privilege over the Executive Summary is based on his extensive experience with DEA, his current oversight of all DEA drug enforcement operations, including San Diego Task Force investigations, and, most importantly, his personal consideration of the contents of the Executive Summary. Mr. Guevara has been employed by DEA "in a series of increasingly responsible, investigatory, supervisory, and managerial positions since September 1972." Guevara decl. ¶ 1. As Chief of Operations, he currently "provides overall coordination and guidance to DEA field offices throughout the world" on DEA's drug enforcement operations. Id. ¶ 5. Thus, Mr. Guevara not only has direct oversight of ongoing investigations being conducted by the San Diego Task Force, but he also possesses a more global understanding of DEA's drug enforcement operations pertinent to an assessment of the harm that would result from disclosure of the Executive Summary. Most importantly, in assessing the impact of disclosure, Mr. Guevara "personally reviewed the draft Executive Summary," as is required for any formal claim

of privilege. Id. ¶ 8. See Nat'l Lawyers Guild at 395 (citing Reynolds, 345 U.S. at 7-8).

The testimony of Sargent Morris, to the extent it is relevant to the Court's consideration of this issue, provides further support for DEA's assertion of privilege and the United States' efforts to shield the Executive Summary from disclosure. Sargent Morris maintains the final draft of the White Tiger Executive Summary in a locked file cabinet, in order to guard against the significant harms that would result from disclosure. See Exhibit 1 to Plaintiffs' Motion ("Morris depo.") at 80-81. Contrary to plaintiffs suggestion, Sargent Morris' personal critique of the way an early draft of the Executive Summary, preceding the March 1999 draft, was written or her disdain for anything that reminds her of the unfortunate leak of the March 1999 Executive Summary to the media says nothing about the ongoing sensitivity of the information contained therein. In addition, the mere fact that no formal charges have yet arisen out of the underlying investigations does not undermine the likelihood of harm to ongoing investigative efforts. If anything, Sargent Morris' efforts to safeguard the contents of the Executive Summary corroborates the United States' endeavor to shield this document from disclosure.

II. **The Declaration of Rogelio Guevara is Purposefully Silent With Respect to Any Specific Subjects of Ongoing Investigations and Plaintiffs Should Not Be Permitted to Probe the Very Subject Matter the Privilege is Designed to Protect**

Contrary to plaintiffs contention, the declaration of Rogelio Guevara intentionally reveals nothing with respect to any individual or entity that may or may not be the subject of ongoing criminal investigations. In order to facilitate the Court's evaluation of whether a privilege has been properly invoked, an agency need only set forth the reasons for withholding the material "with reasonable specificity." See Nat'l Lawyers Guild, 96 F.R.D. at 397. The Supreme Court

Case: 1:00-cv-02081-SO Doc #: 100 Filed: 08/23/02 5 of 9. PageID #: 1131

has recognized that claims of privilege must be evaluated by courts "without forcing disclosure of the very thing the privilege is designed to protect." Reynolds, 345 U.S. at 8. Accordingly, a public statement in support of the claim "need be no more (and no less) specific than is practicable under the circumstances." Foster v. United States, 12 Cl.Ct. 492, 495 (1987) (rejecting plaintiff's argument that the government's declaration was not sufficiently detailed, because "to divulge more details in a public affidavit could disclose the very information the privilege is designed to protect."). In this case, any public assertion of specific subjects or targets of ongoing criminal investigations would undermine the very purpose the law enforcement privilege is designed to serve. For this reason, the declaration of Mr. Guevara is purposefully silent in this regard. Mr. Guevara attests to the fact that "DEA's investigation into the subjects and matters addressed in the Executive Summary is ongoing." Guevara decl. ¶ 14. There is no mention or "suggestion" that plaintiffs, or any other particular individual or entity, are currently under investigation. Plaintiffs' objection on this ground is unfounded.

Moreover, plaintiff should not permitted to take the deposition of Mr. Guevara for the purpose of probing behind the privilege and into the very subject matter sought to be protected. As a general rule, high-level officials of federal agencies may not be routinely compelled to appear and testify at depositions. See, e.g., United States v. Morgan, 313 U.S. 409, 422 (1941); Simplex Time Recorder Co. v. Secretary of Labor, 766 F.2d 575, 586-87 (D.C. Cir. 1985). Such a deposition is particularly inappropriate where, as here, the only asserted purpose of the deposition is to inquire directly into the matters intended to be protected by assertion of the privilege. See Foster, 12 Cl. Ct. at 496 (rejecting plaintiffs' efforts to depose director of the CIA to have him justify a privilege assertion).

- 5 -

As previously set forth in the United States' Opposition to Plaintiffs' Motion to Hold the United States' Motion for Protective Order in Abeyance, cases analyzing government claims of the law enforcement or deliberative process privileges set forth a step-by-step process for judicial resolution of such disputes. See, e.g., Reynolds, 345 U.S. at 7-8; Black v. Sheraton Corp. of Amer., 564 F.2d 531, 541-545 (D.C. Cir. 1977) (applying Reynolds framework to claim of executive privilege); Breed v. United States Dist. Ct., 542 F.2d 1114, 1115 (9th Cir. 1976). First, the government must formally assert its claim of privilege by means of a declaration from the appropriate official. This declaration must be based on actual personal consideration by the official, and must be sufficiently detailed to sustain the claim. See Reynolds, 345 U.S. at 7-8. If the declaration meets these requirements, then the burden shifts to the party seeking access to demonstrate a particularized and compelling need for the information that outweighs the public interest in non-disclosure. If the party seeking access meets this burden, then the Court must apply the appropriate balancing test to determine whether to override the government's privilege in whole or in part. See In re United Telecommunications, Inc. Securities Litigation, 799 F. Supp. 1206, 1208 (D.D.C. 1992) (law enforcement privilege); Black, 564 F.2d at 547 (same); United States v. AT&T, 524 F. Supp. 1381, 1386 n.14 (D.D.C. 1981) (deliberative process privilege); Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 328-29 (D.D.C.), aff'd, 384 F.2d 979 (D.C. Cir. 1966) (same).

Like the Horn Declaration, Mr. Guevara's declaration meets all of the requirements for a formal assertion of privilege. As previously discussed in the United States' Reply, plaintiffs have failed to meet their burden to demonstrate any need for the Executive Summary that would outweigh public interest in non disclosure. In the absence of any showing of need, the Court

need not inquire any further. See Reynolds, 345 U.S. at 11 ("In each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate."). The record now before the Court supports a finding that the Executive Summary should be properly shielded from disclosure.

If the Court finds, however, that the Guevara Declaration is <u>not</u> sufficiently detailed, the correct remedy is to order an <u>in camera</u> review of the Executive Summary. See <u>Black</u>, 564 F.2d at 544 (where affidavit was insufficient, district court obligated to examine the privileged document <u>in camera</u>); <u>Concrete Construction Co., Inc. v. United States Dept. of Labor</u>, 748 F. Supp. 562, 569 (S.D. Ohio 1990) (ordering <u>in camera</u> review to resolve dispute over applicability of law enforcement privilege).[1] Plaintiffs' suggestion that they are entitled to question Mr. Guevara regarding his privilege assertion is flatly contradicted by the relevant case law.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion to Strike the Declaration of Rogelio Guevara or, in the Alternative, for an Order Permitting Plaintiffs to Take His Deposition should be denied.

---

[1] At the Court's request, the United States is also willing to provide additional statements regarding ongoing investigations and the particular harms that would result from disclosure of the Executive Summary for <u>in camera ex parte</u> review, should the Court find that greater specificity than has already been provided is necessary for its determination. See, e.g., <u>Foster</u>, 12 Cl.Ct. at 493 (considering additional declarations for <u>in camera ex parte</u> review); <u>Nat'l Lawyers Guild</u>, 96 F.R.D. at 397 n.14 (noting extensive reliance on <u>in camera ex parte</u> affidavits or testimony to resolve matters of privilege).

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

ANNE L. WEISMANN (DC Bar # 298190)
Assistant Branch Director

_____
SARA W. CLASH-DREXLER (PA Bar #86517)
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Ph. (202) 514-3481
Fax (202) 616-8460
sara.clash-drexler@usdoj.gov

Dated: August 22, 2002        Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing OPPOSITION was served by facsimile and First Class Mail, postage prepaid, this 22d day of August, 2002, on:

Patrick M. McLaughlin, Esq.
McLaughlin & McCaffrey, LLP
Eaton Center, Suite 1350
1111 Superior Avenue
Cleveland, OH 44114-2500

Philip J. Weaver, Esq.
Smith, Marshall, Weaver and Vergon
500 National City East Sixth Building
1965 East Sixth Street
Cleveland, Ohio 44114

SARA W. CLASH-DREXLER