**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LAREDO NATIONAL | ) | |
| BANCSHARES, INC., *et al.*, | ) | CASE NO. 1:00 CV 2081 |
| | ) | |
| Plaintiffs, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| DONALD E. SCHULZ, *et al.*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | |

These matters are before the Magistrate Judge pursuant to a referral order from Judge Wells

under 28 U.S.C. § 636(b)(1) and Local Rule 72.1: (1) Plaintiffs' Motion to Compel Donald E. Schulz

to Respond to Plaintiffs' Discovery Requests (Doc. No. 64); (2) The United States' Motion for

Protective Order (Doc. No. 68); (3) Plaintiffs' Motion to Hold the Government's Motion for Protective

Order in Abeyance (Doc. No. 70); (4) Plaintiffs' Motion to Compel Discovery from the Government to

Authorize the Release of the NDIC Comments to the Schulz Manuscript or, in the Alternative, for the

Government to Produce the Unredacted Comments (Doc. No. 82); (5) Plaintiffs' Motion to Compel

the Government to Produce Special Agent Pendleton ("Pendleton") for Deposition or, in the

Alternative, to Produce Special Agent Tamara Kessler ("Kessler") for Deposition (Doc. No. 86); and

(6) Plaintiffs' Motion for Order Compelling Defendant Schulz to Execute a Privacy Act Waiver or, in the Alternative, for an Order Directing the United States Army War College ("U.S.A.W.C.") to Release Information Regarding Donald E. Schulz.  (Doc. No. 88.)

For the reasons that follow, the Magistrate Judge recommends:

(1) Plaintiffs' Motion to Compel (Doc. No. 64) be DENIED;

(2) The United States' Motion for Protective Order (Doc. No. 68) be GRANTED;

(3) Plaintiffs' Motion to Hold the Government's Motion for Protective Order in Abeyance (Doc. No. 70) be DENIED;

(4) Plaintiffs' Motion to Compel Discovery from the Government to Authorize the Release of the NDIC Comments to the Schulz Manuscript or, in the Alternative, for the Government to Produce the Unredacted Comments (Doc. No. 82) be DENIED;

(5) Plaintiffs' Motion to Compel the Government to Produce Special Agent Pendleton for Deposition or, in the Alternative, to Produce Special Agent Kessler for Deposition (Doc. No. 86) be DENIED; and

(6) Plaintiffs' Motion for Order Compelling Defendant Schulz to Execute a Privacy Act Waiver or, in the Alternative, for an Order Directing the U.S.A.W.C. to Release Information Regarding Donald E. Schulz (Doc. No. 88) be DENIED.

## I. Background

In its Complaint, Plaintiffs, Laredo National Bancshares, Inc., *et al*. (collectively "Laredo"), allege the following.  Operation White Tiger Project ("White Tiger") is a large study on the United States' war on drugs and drug traffickers.  (Compl. ¶¶ 2-3.)  It is the culmination of 56 separate Drug

Enforcement Administration ("DEA") criminal investigations; 28 separate Federal Bureau of Investigation ("FBI") criminal investigations; 140 Internal Revenue Service ("IRS") and Financial Services Task Force criminal investigations; and Central Intelligence Agency ("CIA"), Defense Intelligence Agency ("DIA") and other criminal investigations.  (*Id*.)  The White Tiger's purpose is to analyze methods for the eradication of the drug trafficking and money laundering reportedly responsible for the flow of about 70% of the cocaine and 18% of the heroin into the United States.  (*Id*.)

Laredo alleges Defendant, Donald Schulz ("Schulz"), currently the Political Science Department Chairman at Cleveland State University, while employed as a civilian research professor at the U.S.A.W.C. Strategic Studies Institute, obtained and leaked to the press a draft executive summary of the White Tiger ("White Tiger Paper.")  (*Id*. at 4.)  Laredo further alleges that as a result of Schulz's media leak, newspaper articles containing disinformation about National Bancshares, Inc. ("LNBI"), National Bank ("LNB"), the President of LNB - Mr. Gary Jacobs, LNBI's Chairman, and Mexico's Hank family appeared.  (*Id*.)  Laredo also claims Schulz provided "disinformation" about Plaintiffs to the NDIC and, therefore, was the source of falsehoods and disinformation contained in the White Tiger Paper.

Based upon these allegations, Laredo asserts claims for: (1) Violation of the Racketeer Influenced and Corruption Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1964(c); (2) Conspiracy to Violate RICO, 18 U.S.C. §§ 1962(d) and 1964(c); (3) Violation of the Ohio Pattern of Corrupt Activity Act, O.R.C. §§ 2923.31 *et seq*.; (4) Tortious Interference with Contract and Prospective Business Relations; (5) Defamation/Commercial Disparagement/Injurious Falsehood; (6) Invasion of Privacy; (7) Violation of Federal Privacy Act and Attorney General Order; and (8) Civil Conspiracy.

3

During discovery, several disputes arose between Schulz, Laredo, and a Non-Party, the United States, which resulted in the filing of numerous motions.  On July 9, 2002, the Court issued an Order: disposing of some of the disputes, setting briefing deadlines for other disputes, and directing Schulz to submit a privilege log detailing his objections to Laredo's production requests.  (Doc. No. 81.)  On August 2, 2002, counsel for Laredo and Schulz submitted a letter stating they had resolved their disputes pertaining to the privilege log.  (Doc. No. 104.)[1]  Thus, in all of the motions pending before this Court, the following are the only remaining issues: (1) Laredo's request that Schulz produce any drafts of the White Tiger Paper (Doc. Nos. 64, 67, 68, 69, 70, 72, 75, 83, 85, 94); (2) Laredo's request that Schulz produce the 8 page document prepared by the National Drug Intelligence Center ("NDIC") (Doc. Nos. 82, 91), which allegedly contains comments on Schulz's manuscript made by NDIC analysts; (3) Laredo's request to take the depositions of Pendleton and Kessler (representatives of the United States) (Doc. Nos. 86, 97);[2] and (4) Laredo's request that Schulz execute a privacy waiver. (Doc. Nos. 88, 95).  The most critical issue involved in these disputes is whether the White Tiger Paper

_____

[1] In the "Conclusion" section of its Motion to Compel, Laredo sets forth 6 categories of discovery requests, covering approximately 20 individual requests for interrogatories and production of documents.  (Doc. No. 64.)  However, as a result of the June 28, 2002 Court Order and the parties' August 2, 2002 letter, there remain only 2 discovery issues between Laredo and Schulz: (1) the request for the White Tiger Paper; and (2) the request for documents concerning the reason Schulz separated from employment at the USAWC.  Both of these issues are discussed in the Report and Recommendation ("R&R").

[2] Laredo also attempted to depose Dolia Estevez in Virginia.  The United States opposed the deposition.  The dispute was presented to the district court in Virginia, the location of the deponent.  A Magistrate Judge in Virginia issued an R&R recommending Laredo not be permitted to conduct the deposition.  Laredo objected to the R&R.  At the time of this Court's discovery conference, the district judge in Virginia had not yet issued a ruling.  (Oral representation made by Colin Jennings at the June 28, 2002 hearing on Plaintiffs' Motion to Compel.)

and information derived therefrom is privileged and protected from disclosure.

## II.  White Tiger Paper

The discovery issue concerning the White Tiger Paper came before the Court in Laredo's Motion to Compel (Doc. No. 64), which, among other things, sought to compel Schulz to disclose information pertaining to the White Tiger Paper.  The Motion characterizes the White Tiger Paper as an "unvetted, predecisional, draft document" (*Id*. at 2), which Schulz "unlawfully obtained from an NDIC supervisor."  (*Id.*).  In the Motion to Compel, Laredo represented that Schulz admitted he had: "1) provided information to the NDIC; 2) . . . obtained a copy of the draft White Tiger executive summary from Daniel Huffman [an NDIC employee at the time]; and 3) disseminated the contents of that confidential, draft, predecisional document to a member of the news media . . . ." (*Id.*)  Laredo asserted Schulz refused to produce the White Tiger Paper and other information on the basis of a directive from an attorney for the U.S. Department of Justice.  Laredo claimed Schulz lacked standing to assert the government's privilege.

The issue of Schulz's standing subsequently became moot when the United States filed a Motion for Protective Order requesting this Court to order Schulz (1) not to disclose or cause to be disclosed the contents of the White Tiger Paper and (2) to return any copies of this document to counsel for the United States.  (Doc. No. 68.)  The United States asserts the White Tiger Paper should not be disclosed because: (1) it is subject to the law enforcement privilege; (2) it is subject to the deliberative process privilege; and (3) the law enforcement and deliberative process privileges were not vitiated by Huffman's or Schulz's unauthorized disclosure of the White Tiger Paper.

Eventually,[3] both Laredo and Schulz opposed the Motion for Protective Order.  (Doc. Nos. 83, 85.)  Both Laredo and Schulz suggested this Court review the White Tiger Paper *in camera*.

Under the well-established procedure for resolution of privilege disputes, the government must formally assert its claim of privilege by means of a declaration from the appropriate official.  *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953).  This declaration must be based on actual personal consideration by the official, and must be sufficiently detailed to sustain the claim.  *Id*.  If the declaration meets these requirements, the burden shifts to the party seeking access to demonstrate a particularized and compelling need for the information that outweighs the public interest in non-disclosure.  *In re United Telecomm., Inc. Sec. Litig.*, 799 F. Supp. 1206, 1207 (D.D.C. 1992).  To determine if the party seeking disclosure meets this burden, the Court must apply a balancing test to determine whether to override the government's privilege in whole or in part.  Further, in considering whether to disclose the information, a court should assign greater weight to the confidentiality interests asserted by a non-party to the litigation and require the requesting party to make a heightened showing of relevance and necessity.  *Crane Plastics Co. v. Louisana-Pacific Corp*., 119 F. Supp. 2d 749, 751 (S.D. Ohio 2000).

The government's motion is supported by the declaration of Michael T. Horn, Director of the

_____

[3] Initially, Laredo did not oppose the government's motion on the merits of the legal arguments. Instead, Laredo filed a motion to hold the government's motion in abeyance so that Laredo could take the deposition of the Michael T. Horn to test his conclusions that (1) disclosure of the White Tiger paper would "jeopardize ongoing investigations" and (2) the document contains "extremely sensitive law enforcement information."  (Doc. No. 70 at 2.)  The government opposed Laredo's Motion and contended any deposition of government agents, including Horn, should follow the procedures set forth in the Administrative Procedure Act.  This R&R addresses the request for depositions of government employees at Section III, *infra*.

NDIC, a report of investigation, and a memorandum of interview with Donald Schulz.  Office of

Inspector General ("OIG") agents prepared the report and the memorandum, both of which relate to

the disclosure of the White Tiger Paper.  In his declaration, Michael T. Horn, the director of the NDIC,

asserts claims of law enforcement and deliberative process privileges.  Horn claims the White Tiger

Paper contains information provided by other law enforcement agencies to the NDIC regarding their

ongoing investigations and disclosure of such information would thwart the NDIC's mission by

discouraging those law enforcement agencies from sharing information with the NDIC.  (Horn Decl. ¶¶

5, 13, 14, 19-21.)  Horn also notes the chilling effect that disclosure would have on the NDIC's internal

processes because disclosure would reveal the identities of individuals and entities who may or may not

be the targets of investigations, who may be witnesses in criminal proceedings, and who may or may

not be confidential informants.  (*Id*. ¶¶ 13-17.)  Horn also attests to the continuing possibility of

prosecution arising out of information contained in the White Tiger Paper.  (*Id*. ¶¶ 14-24.)  Neither

Laredo nor Schulz disputes this declaration is based on actual personal consideration by the official,

and is sufficiently detailed to sustain the claims of privilege.  Rather, Laredo challenges the credibility of

the Horn declaration.

The government subsequently submitted the declaration of Rogelio Guevara, Chief of

Operations for the DEA at its headquarters in Washington D.C.  (Doc. No. 92.)  His declaration,

among other things, states: (1) the NDIC prepared the White Tiger Paper at the request of the DEA

and FBI; (2) to assist the NDIC in its assessment, the DEA provided the NDIC with volumes of

documents and records gathered by the DEA in the course of conducting criminal investigations; (3) a

substantial amount of information in the White Tiger Paper originated with DEA source materials; and

7

(4) release of the White Tiger Paper will significantly compromise the DEA's ongoing criminal investigations into the subjects and matters addressed in the White Tiger Paper, will endanger the lives and security of confidential sources and law enforcement agents, and will have a chilling and undermining effect on the willingness of information sources to cooperate with the DEA.  Finally, he asserts the DEA's investigation into the subjects and matters addressed in the White Tiger Paper is ongoing.  The United States also suggested the Court may review the White Tiger Paper *in camera* to resolve any dispute about its contents.  (Doc. No. 92 at 7, n. 3.)

This Court has, in fact, reviewed the White Tiger Paper *in camera*.  (*See* Doc. No. 103: Order; Doc. No. 105: Sealed filing).

The government has formally asserted its privilege through the declarations of Horn and Guevera, which are based upon actual knowledge by the officials and are sufficiently detailed to sustain the claim of privilege.  Thus, the burden shifts to Laredo and Schulz to demonstrate a particularized and compelling need for the information that outweighs the public interest in non-disclosure.

**A.  Law Enforcement Privilege**

The law enforcement privilege shields investigative files and testimony about those files from disclosure.  *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988).  This common-law privilege, incorporated in the Freedom of Information Act, is designed to safeguard the integrity of the law enforcement process.  *Id*. at 271-72.  To overcome the United States' claim of law enforcement privilege, Laredo and Schulz must demonstrate a particularized and compelling need for the information that outweighs the public interest in non-disclosure.  *In re United Telecomm., Inc. Sec. Litig.*, 799 F. Supp. at 1207; *Black v. Sheraton Corp. of America*, 564 F.2d 531, 547 (D.C. Cir. 1977).  The

8

Court then must consider whether a series of factors militate for or against disclosure of the White Tiger

Paper.  Set forth below is an illustrative, but not exhaustive list of factors:

> (1) whether disclosure will thwart governmental processes by
> discouraging citizens from giving the government information;
>
> (2) the impact upon persons who have given information of having their
> identities disclosed;
>
> (3) the degree to which governmental self-evaluation and improvement
> will be chilled;
>
> (4) whether the information is factual or evaluative;
>
> (5) whether the party seeking discovery is an actual or potential
> defendant in any criminal proceeding either pending or reasonably likely
> to follow from the incident in question;
>
> (6) whether the police investigation has been completed;
>
> (7) whether any interdepartmental disciplinary proceedings have arisen
> or may arise from the investigation;
>
> (8) whether the plaintiff's suit is non-frivolous and brought in good faith;
>
> (9) whether the information sought is available through other discovery
> or from other sources; and
>
> (10) the importance of the information sought to the plaintiff's case.

*Tri-Star Airlines, Inc. v. Willis Careen Corp.*, 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999) (citing

*In re Sealed Case*, 856 F.2d at 272).

Laredo's Complaint repeatedly alleges the White Tiger Paper: (1) is a predecisional unvetted

draft report that summarizes and contains sensitive law enforcement information, (2) is top secret, (3) is

a strategic assessment of drug trafficking that had been or is the target of DEA, FBI, Customs, IRS and

Financial Services Task Force criminal investigations as well as numerous CIA, DIA and other

investigations involving money laundering and facilitation of drug trafficking, and (4) summarizes a

tactical and strategic prosecutorial road-map and organizational chart.  (Compl. ¶¶ 7, 9, 21-24, 43, 56,

57a-c, 106.)  Nevertheless, Laredo argues the United States' assertion of privilege is unwarrranted

because the White Tiger Project and summary have been "disavowed by the United States'

government," as indicated by former Attorney General Janet Reno's statements that the subject of the

report was beyond the substantive expertise and responsibility of the NDIC and the project had been

terminated.  (Doc. No. 83 at 3.)  The point of Laredo's argument is difficult to discern.  There is no

further analysis of, or case support for, its position in its numerous briefs.  Laredo has not addressed in

any detail the first six factors set forth above, other than to state the NDIC's work has been concluded.

Laredo does not explain why comments by the former Attorney General obviate the privilege or make

the contents of the White Tiger Paper any less sensitive.  Nor does Laredo address the fact that

numerous other investigative agencies contributed sensitive information to the NDIC and their work

continues.

    With regard to the first six factors, the Court finds the White Tiger Paper contains factual and

substantial evaluative information pertaining to criminal investigations and potential targets of criminal

investigations.  Horn's statement that the "document contains a candid discussion of the strengths and

weaknesses of the government's investigation" (Horn Decl. ¶ 13) is supported by the White Tiger

Paper itself.  The White Tiger Paper contains factual and evaluative information about various

individuals and entities, their relationships, finances, developing and anticipated future activities, and

methods and techniques of operations.  It is not entirely clear from a review of the White Tiger Paper

whether specific individuals who are sources of information can be identified. While specific individuals are not named as sources of information, this Court cannot discount the possibility, as Guevera declares, that confidential sources could be identified simply by the context in which the information is set forth in the White Tiger Paper. Furthermore, the declarations assert the lives of agents and confidential informants will be endangered if the White Tiger Paper is disclosed. Redaction is not a reasonable alternative under these circumstances.

In addition, disclosure under these circumstances would have a chilling effect on government sources of information and would thwart governmental investigations in general, and DEA investigations in particular, because disclosure would discourage persons from coming forward with information. Guevera declared the earlier media release about the White Tiger Paper caused previous sources to stop working with the DEA, made it more difficult for the DEA to obtain new cooperating sources, and forced the DEA to change and abandon certain strategies in order to protect sources. He suggests the DEA's current investigation would suffer similar setbacks if the White Tiger Paper is revealed. Although the NDIC is no longer conducting any investigation or consolidating information obtained from various agencies, the DEA (whose documents, records and resources are a source of information in the White Tiger Paper) is continuing investigations into matters that are the subject of the White Tiger Paper. Guevera's declaration of a continuing investigation is supported by the contents of the White Tiger Paper.

Although the White Tiger Paper is not a self-evaluation or a government improvement document, disclosure nevertheless could have a chilling effect on the government's investigations because disclosure could discourage information sharing and joint evaluation of information by various

11

agencies.

The government has not submitted a declaration that any of the parties are actual or potential defendants in any criminal proceedings either pending or reasonably likely to result.  Nevertheless, Laredo's allegations in this case are based upon the premise that the White Tiger Paper contains sensitive law enforcement information and includes information about one or more of the parties and/or close associates or persons affiliated with one or more of the plaintiffs.  Laredo claims the information is false.  However, the DEA's investigation into the subject of the White Tiger Paper is continuing.  Thus, if the White Tiger Paper does contain sensitive law enforcement information about these individuals, the government would have a significant interest in not having the White Tiger Paper disclosed to the parties in this case.  Laredo's suggestion that the report be disclosed subject to a protective order so that Laredo can use the information in this and other cases, would not adequately protect the government's interest.

With regard to the seventh factor, there has been disciplinary action taken against an NDIC employee (Huffman) with regard to the unauthorized disclosure of the White Tiger Paper to Schulz.  There is no indication further action will result. This factor has no apparent impact on disclosure.

The last three factors, *i.e.* whether the plaintiff's suit is non-frivolous and brought in good faith; whether the information sought is available through other discovery or from other sources; and the importance of the information sought to the plaintiff's case, will be discussed together.

Laredo claims a compelling need for the White Tiger Paper to "adequately address the assertions and inquiries made by defendant Schulz during discovery, and possibly at trial . . ." (Doc. No. 83) in addition to a general claim of relevancy.  Schulz claims a compelling need for the White

12

Tiger Paper because his "only means of establishing that the media reports are either incorrect or unfairly taken out of context is to compare the two as they pertain to Plaintiffs."   (Doc. No. 85 at 8.)

Schulz and Laredo have made broad assertions, but have not provided any analysis of specific information necessary to prove or address specific claims.  Despite the numerous briefs, neither Schulz nor Laredo has complied with this Court's directive at the discovery conference that, in responding to the United States' Motion for a Protective Order, the parties should address the need for the information in light of the particular legal claims in this case.  For example, Laredo (1) has not discussed the merits of a single claim in the Complaint or the elements necessary to prove a single count - or even made a colorable showing that its claims are not frivolous, (2) has not discussed what particular piece of information in the White Tiger Paper is necessary to prove any particular aspect of a claim, (3) has not explained why disclosure of the entire content of the White Tiger Paper is necessary to prove those claims, (4) has not engaged in any specific analysis or representations as to the efforts Laredo has made to obtain particular pieces of information necessary to its case from other sources, and (5) has not explained why the information already presented by the government to Laredo is insufficient.[4]  Laredo claims only "the draft White Tiger executive summary is relevant to this action because it is the document which was leaked by Huffman to Schulz and by him to at least one member of the media" thereby causing harm to Laredo.  Yet, a claim of relevance alone is insufficient to breach the law enforcement privilege.  *Collins v. Shearson/American Express, Inc.*, 112 F.R.D. 227, 229-30

---

[4] Laredo claims only that it cannot obtain a copy of the White Tiger Paper from other sources. This misses the point.  The issue is not whether Laredo can obtain an exact copy of the White Tiger Paper from other sources.  The issue is whether Laredo can obtain from other sources, information that could establish the claims set forth in the Complaint.

(D.D.C. 1986) ("if that were the only test, the rules of privilege would be relatively meaningless--especially since discovery normally extends not only to relevant matter but also to material that may lead to the discovery of relevant matter").

Laredo also claims it would be "unfair" to prevent Laredo from having the document because Schulz has it and apparently used it to formulate discovery requests. This claim escapes legal analysis. In the course of litigation, there are always numerous documents and other information that constitute the thought processes of an attorney and his client - particularly in formulating discovery requests. This Court is not aware of any rules that mandate disclosure of a document in such circumstances, and Laredo has cited to none. Laredo's bare assertion on this point is not persuasive. Moreover, such an allegation is wholly insufficient to overcome the government's assertion of privilege. In fact, it makes a point for the return of the document to the United States from Schulz.

As for Schulz, he claims the document is important to his case because he must be able to make a factual comparison between the White Tiger Paper and the statements appearing in the media to defend against the defamation claim. There is no analysis of the statements that are or could be legally defamatory, *e.g.* which statements, if any, contain facts, rather than opinion or evaluation, and/or which statements are legally actionable by the parties to this lawsuit.[5] Schulz merely speculates that while

_____

[5] Almost all of the media reports referenced in the complaint and various other documents submitted by the parties refer to members of the Hank family, not LNB, not LNBI and not Gary Jacobs. Members of the Hank family are not parties to this lawsuit. Among other things, neither Laredo nor Schulz has touched upon the legal significance of statements in the media pertaining to various members of the Hank family, whether plaintiffs need to prove the statements about the Hank family are false to support a defamation claim, or whether the truth or falsity of statements made about the Hank family has any bearing on plaintiffs' defamation claim. Nor have the parties made any analysis concerning the scope of Schulz's liability, if any, for defamation based upon newspaper articles

14

some of Laredo's claims are frivolous, the defamation claim may require a defense.  These conclusory

statements are insufficient to show a compelling need.  Moreover, in evaluating Schulz's interest, the

Court cannot ignore his admission that he disclosed the White Tiger Paper to the media.  To some

extent, he has caused his own predicament, if in fact one exists.

Further, this Court is not convinced the only way to determine whether the content of the White

Tiger Paper was accurately reported in the media is disclosure of the entire paper.  Schulz has not

documented any efforts he has made to obtain verification from the government or the media that the

media accurately reported content of the White Tiger Paper.  Schulz is and has been in possession of

the White Tiger Paper.  He has actual knowledge of its content.  He has failed to identify any published

statements attributed to, but not contained in the White Tiger Paper or any statements allegedly taken

out of context.  Schulz could have sought permission of the Court to file such an analysis under seal and

*in camera*.  He has not done so.  He has failed to show that this purported defense is not frivolous.

Finally, the United States is not a party to this action.  It would cause the United States

significant harm if there was further disclosure of the White Tiger Paper.  Neither Schulz nor Laredo has

satisfied its burden of showing a compelling and particularized need for the document.  The interest of

the United States and the public that the White Tiger Paper not be disclosed further, substantially

outweighs Laredo's and Schulz's alleged need.

**B.  Deliberative Process Privilege**

The United States also asserts the deliberative process privilege.  The deliberative process

_____

purportedly publishing the content of a government document.

privilege protects information from disclosure if it is both "predecisional" and "deliberative." *Rugiero v.*

*United States Dept. of Justice*, 257 F.3d 534, 549 (6th Cir. 2001).  A document is predecisional if it

is "received by the decisionmaker on the subject of the decision prior to the time the decision is made"

and deliberative if it is the "result of the deliberative process." *Id*.  "The exemption thus covers

recommendations, draft documents, proposals, suggestions, and other subjective documents which

reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas*

*Corp. v. Dept. of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  After concluding that the privilege is

properly invoked, the court must balance the public interest in non-disclosure with the individual's need

for the information as evidence.  *Redland Soccer Club, Inc. v. Dept. of the Army*, 55 F.3d 827, 854

(3d Cir. 1995).  In balancing the interests, the court should at least consider:

> (1) the degree to which the proffered evidence is relevant;
>
> (2) the extent to which it may be cumulative; and
>
> (3) the opportunity of the party seeking disclosure to prove the particular facts by other means.

*First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994).

The White Tiger Paper falls within the deliberative process privilege.  Horn claims the White

Tiger Paper sought by Laredo was superceded by at least two subsequent drafts.  (Horn Decl. ¶ 9.)

He explains that the White Tiger Paper was in the midst of the NDIC's vetting process when the

NDIC's work was prematurely halted by an unauthorized disclosure.  (*Id*. ¶ 10.)  The White Tiger

Paper merely reflects the personal views of the analysts who were working on it at the time of the

disclosure, rather than the considered judgment of the agency.  (*Id*. ¶ 13.)  Neither Laredo nor Schulz

contends that the United States improperly invoked the deliberative process privilege.  In fact, Laredo describes the White Tiger Paper as a predecisional document in the Complaint.

Laredo and Schulz make the same broad and conclusory allegations with regard to the deliberative process privilege that they made in connection with the law enforcement privilege.  Neither Laredo nor Schulz present any specific arguments as to (1) the extent to which the White Tiger Paper may be cumulative or (2) whether the contents of the White Tiger Paper are provable by other means. They also make general claims of relevance.  Similar to the law enforcement privilege, a claim of relevance alone is insufficient to breach the deliberative process privilege.  *U.S. v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993).  Further, as noted by the United States, the United States has provided Laredo with deposition testimony by all the key NDIC personnel who worked on the White Tiger Paper.  During each of these depositions, Laredo had the opportunity to examine Schulz's impact on the White Tiger Paper and the opportunity to inquire into the particular facts by other means.

Laredo and Schulz have failed to make a showing of necessity that sufficiently outweighs the government's interest in protecting disclosure of a predecisional draft of the White Tiger Paper.

## C.  Waiver of the Privileges

Laredo's primary complaint is that the entire draft of the White Tiger Paper has been widely released to the news media, and therefore Laredo is entitled to this information.  It is not entirely clear from legal precedent whether waiver is a complete bar to assertion of the privilege, or one of several factors to be considered in the balancing test.  Under either approach, Laredo's claim that the government has waived the privilege is without merit.

An unauthorized disclosure (or "leak") of a government document cannot waive an agency's

17

privilege.  *Simmons v. U.S. Dept. of Justice*, 796 F.2d 709, 712 (4th Cir. 1986).  "Where there has

been less than full disclosure . . . courts have been reluctant to release the requested information.  This

is because release from an official source naturally confirms the accuracy of the previously leaked

information."  *Id*.  However, when the withheld information has been the subject of widespread

publicity, there is no basis upon which to withhold the production of that information.  *Fisher v. U.S.

Dept. of Justice*, 772 F. Supp. 7, 12 (D.C. 1991).  A plaintiff asserting a claim of prior disclosure

bears the initial burden of pointing to specific information in the public domain that appears to duplicate

that information being withheld.  *Afshar v. Dept. of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

Laredo claims the government waived its privilege because (1) OIG inspectors did not retrieve

all copies of the White Tiger Paper from Schulz, who still retains a copy, (2) a DEA agent and a

member of the Financial Services Task Force in San Diego have copies of it, and (3) the White Tiger

Paper has been the subject of widespread publicity.

Laredo offers little or no legal support for its contention that the OIG inspectors' failure to

retrieve all copies of the White Tiger Paper from Schulz constitutes a complete waiver of the privilege.

It would be a severe sanction to allow the public release of a document containing sensitive, evaluative

law enforcement information otherwise subject to the law enforcement and deliberative process

privilege because two investigating inspectors did not retrieve all copies of the document from a single

individual.[6]  This Court does not believe that the unauthorized disclosure to Schulz and the subsequent

---

[6] Schulz was no longer an employee of the United States Army War College at the time of the
interview.  Laredo has not identified what authority, if any, the inspectors had to require the return of all
of copies of the White Tiger Paper.

failure of investigating agents to retrieve all copies of the White Tiger Paper from him constitute the type of widespread disclosure necessary to vitiate the privilege.  In addition, the United States is now asking this Court to order the return of those documents from Schulz and there is no evidence Schulz engaged in widespread dissemination of the White Tiger Paper after the OIG interview.  Further, even if the inaction of the OIG inspectors could be imputed to the NDIC as a waiver of the privilege for all future disclosure requests, the NDIC could not waive the DEA's privilege over the contents of the document. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 402 n.9 (D.C. Cir. 1984) (one agency's decision to disclose information cannot affect the other agency's decision to disclose the same information).  "Prior disclosure of similar information does not preclude the potential for harm resulting from the present, requested disclosure."  *Id*; *accord, Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978).

Similarly, possession of the White Tiger Paper by a DEA agent and a Financial Services Task Force agent does not vitiate the privilege, establish waiver or reflect wide spread disclosure of the document.

In claiming widespread publicity, Laredo cites to four newspaper articles as evidence that the entire draft of the White Tiger Paper was widely released to the media.  Laredo's claim is overstated.  Even assuming four newspaper articles constitute "widespread publicity," none of these newspapers published the document in its entirety.  These articles merely reference, or in some instances purport to quote from, the contents of the White Tiger Paper.  Moreover, the Court cannot conclude based solely upon the articles that all four media sources had or maintain  the White Tiger Paper in its entirety.  The United States could still suffer additional harm to its investigations, sources of information, and ability to

gather information if further disclosure of the White Tiger Paper is allowed.

Thus, for the reasons set forth above, the Magistrate Judge recommends (1) the White Tiger Paper not be disclosed to Laredo and (2) Schulz return all copies of the White Tiger Paper in his possession, custody, or control to the United States.

### III.  Laredo's Motion to Compel the Release of the NDIC Comments to the Manuscript; Laredo's Motion to Compel the Government to Produce Special Agents Pendleton or Kessler for Deposition

Laredo seeks (1) the production of a unredacted version of an 8 page document that contains comments by an employee at the NDIC to Schulz's manuscript on Narcopolitics in Mexico and (2) to take the deposition of OIG investigators Pendleton or Kessler.  (Doc. Nos. 82, 86.)  This Report and Recommendation will address these requests in the same section because both of the requests involve the application of procedures for obtaining information from the United States, its agencies, and employees.

In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951), the Supreme Court held that a federal employee may not be compelled to comply with a federal subpoena contrary to the employing agency's directive.  Thereafter, pursuant to *Touhy*, Congress enacted the "*Touhy*" regulations:

> In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, provide any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Justice Department

20

official . . .

28 C.F.R. § 16.22(a).

As to the 8 page document containing the NDIC comments, on June 4, 2001, the DOJ wrote counsel for Laredo to convey the NDIC's final position with respect to the production of these comments. (Doc. No. 96, Exh. 1.) In the letter, the NDIC stated that it would not disclose the content of the redacted comments. This decision was based upon a determination (1) made under the *Touhy* doctrine, (2) that the content of the comments was irrelevant to Laredo's Complaint, and (3) it would be contrary to the United States' interests as well as to the interests of certain third parties mentioned in the comments. (*Id*.)

As to the depositions, on May 10, 2002, counsel for Laredo sent a letter to the DOJ requesting oral testimony from OIG Special Agent Pendleton in connection with this case. (Doc. No. 97, Exh. 1.) On May 24, 2002, the OIG informed counsel for Laredo that, following the procedures set forth by the DOJ's *Touhy* regulations, Laredo's request would be denied. As an alternative to Laredo's request, the OIG offered to provide Laredo with a written declaration from Pendleton setting forth his efforts to retrieve the White Tiger Paper. (Doc. No. 97, Exh. 2.) Laredo rejected the OIG's offer for a written declaration from Pendleton and, instead, requested that OIG Special Agent Kessler be allowed to testify as an alternative witness because Kessler had testified in another case involving the same set of facts. (Doc. No. 97, Exh. 3.)

On June 5, 2002, the OIG responded to Laredo and reaffirmed its decision not to allow Pendleton to testify. The OIG also denied Laredo's request to depose Kessler. The OIG explained that the Government was a party to the other case in which Kessler testified, and thus, the OIG's

decision to allow her testimony in the other case was guided by different considerations.[7]

In this case, the United States is not a party; therefore, the decision is guided by the DOJ's *Touhy* regulations.  (Doc. No. 97, Exh 4.)  Further, in cases in which the government is not a party, the Administrative Procedure Act ("APA") provides the only means for review of an agency's refusal to permit its employees to comply with subpoenas.  *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274-77 (4th Cir. 1999); *United States v. Williams*, 170 F.3d 431, 434 (4th Cir. 1999); *Envtl. Prot. Agency v. Gen. Elec. Co.*, 197 F.3d 592, 599 (2d Cir. 1999); *Davis Enters v. Envtl. Prot. Agency*, 877 F.2d 1181, 1186 (3d Cir. 1989).  Laredo has not addressed the issue of this Court's jurisdiction to compel testimony of an employee of the United States when the United States is not a party.  Laredo does not present this issue to the Court as a request under the APA to review the agency decision; nor does it establish any basis for review of the government's decision under any provision other than the APA.[8]  Under the present procedural posture of this case, this Court lacks

---

[7] Relying on the *Touhy* regulations, the OIG informed Laredo the request would be denied on the grounds of privilege, duplicity, and undue burden because: (1) Laredo already had been provided with the OIG investigative report prepared in connection with Pendleton's investigation of the leak and had been provided with the OIG's memorandum of its interview with Schulz; (2) Pendleton is not permitted to testify concerning his efforts in connection with this investigation beyond what is stated in the investigative report and any attempt to probe his mental processes would be subject to the deliberative process privilege; and (3) the majority of testimony sought from Pendleton is privileged. (Doc. No. 97, Exh. 2 (May 24, 2002 letter).)

[8] During the June 28, 2002 hearing, counsel for Laredo indicated he intended to file a motion to compel the United States to produce the NDIC's comments and the depositions of Pendleton and Kessler.  The United States asserted Laredo's request to it for that information  had been denied by the United States pursuant to the *Touhy* doctrine.  The United States indicated this Court did not have jurisdiction to hear Laredo's appeal from the denials, because the APA provides the only means of review.  The Court instructed Laredo that if it intended to raise the issue with the Court, it should file the appropriate motions.  Laredo filed a Motion to Compel the NDIC comments, a Motion to Compel the Depositions, and a Reply Brief pertaining to the disclosure of the NDIC comments.  However, in all of

22

jurisdiction to review the NDIC's refusal to disclose the document.[9]

### IV.  Laredo's Motion for Order Compelling Defendant Schulz to Execute a Privacy Act Waiver or, in the Alternative, for an Order Directing the United States Army War College to Release Information Regarding Donald E. Schulz

In its request for production of documents numbers 19 and 20, Laredo asks Schulz to "produce any and all documentation, correspondence, memoranda or e-mails relating or referring to your departure from the U.S. Army War College . . . [and] any and all telephone records and toll records of any telephone primarily used by you at any time in the last three (3) years." (Doc. No. 64, Exh. A.)  Schulz alleges the documents requested by Laredo are protected under the Privacy Act.

The Privacy Act provides: "[N]o agency shall disclose any record which is contained in a system of records by any means of communications to any person, or to another agency, except

_____

these briefs, Laredo has not addressed the issue of the APA.

[9] Laredo not only failed to address the jurisdictional issue, but also failed to address or apply the proper standard of review for agency actions.  The standard of review for an agency's denial of third party discovery requests under the APA is a deferential standard of review.  *COMSTAT Corp.*, 190 F.3d at 274, 277; *Envtl. Prot. Agency v. Gen. Elec. Co.*, 197 F.3d at 599; *Moore v. Armour Pharm.*, 927 F.2d 1194, 1197 (11th Cir. 1991).  This standard permits a federal court to order a non-party agency to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner.  *Id*.

In a June 4, 2001 letter, the Department of Justice provided the reasons the NDIC's comments could not be produced without redactions, which included a suggestion some of the comments (which might not be accurate) (1) could put certain individuals at risk of bodily harm, (2) purport to reveal a certain individual's status as a confidential informant, (3) could damage important relationships between various United States law enforcement agencies and their foreign counterparts, (4) could damage diplomatic relations between the United States and other countries, and (5) could suggest criminal association by individuals or entities (that may or may not exist) and pose a serious risk of reputational harm to those individuals or entities, none of whom are parties to this action. (Doc. No. 96, Exh. 1.) Laredo has not presented any evidence or argument that questions the rational basis for the NDIC's refusal to comply with Laredo's production requests.

23

pursuant to a written request by, or with the prior written consent of, the individual to whom the records

pertain . . ." However, the Privacy Act does not create a qualified discovery privilege, and there is no

basis in the statute's legislative history for inferring one. *Laxalt v. McClatchy*, 809 F.2d 885, 888

(D.C.Cir. 1987). The Privacy Act creates a statutory ban on disclosure of information contained in

government files; government agencies are permitted to release information about individuals only under

certain circumstances. 5 U.S.C. § 552a. The only applicable circumstance in the present case is

"pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11). The Privacy Act

does not specify the standard by which such disclosure may be ordered and there has been some

disparity among the courts on the appropriate standard. *Compare Laxalt v. McClatchy*, 809 F.2d

885, 888 (D.C.Cir. 1987) (standard for court order is same as usual discovery standard) *with Perry

v. State Farm Fire & Casualty Co.*, 734 F.2d 1441, 1447 (11th Cir. 1984) (courts must balance

need for disclosure against potential harm from disclosure). This Court need not decide which of the

two tests advanced by the parties is applicable because under either test, Laredo's argument fails.

Federal Rule of Civil Procedure 26(b) provides in pertinent part: "[p]arties may obtain

discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the

pending action . . ." The party seeking the discovery must demonstrate the relevance of the discovery.

*Conti v. Universal Enter., Inc.*, No. 00-4538, 2002 WL 31108827, at *9 (6th Cir. Sept. 20, 2002).

Relevance is defined as any information reasonably calculated to lead to the discovery of admissible

evidence. FED. R. CIV. P. 26(b)(1). Laredo contends the requested documents are relevant to its

allegations because they relate to: (1) the unlawful dissemination of the White Tiger Paper; (2) Schulz's

communications with NDIC personnel; and (3) communications with media representatives. Laredo's

24

contention of relevancy is nothing more than a statement of the subject matter of the requested

documents.  Laredo has not set forth any specific facts or arguments as to how the documents may be

relevant to its legal claims.  Without such facts or arguments, Laredo has failed to carry its burden of

demonstrating that the requested documents are relevant to its legal claims.

Further, Laredo has failed to establish a need for the requested discovery.  Schulz contends

Laredo has access to the information through other sources, such as depositions and subpoenas for

telephone records.  A motion to compel will not be granted where the party requesting the discovery

fails to pursue other available methods for obtaining the requested information.  *Conti v. Universal*

*Enter., Inc*., No. 00-4538, 2002 WL 31108827, at *9 (6th Cir. Sept. 20, 2002).  Laredo has not

established the unsuccessful pursuit of other available methods for obtaining the requested information.

Thus, Laredo has failed to carry its burden of demonstrating a need for the disclosure for the requested

discovery.

Moreover, as Laredo has failed to present any arguments or legal authority pertaining to its

request for an order directing the USAWC to release information regarding Schulz, Laredo has failed

to show this Court that such an order is proper.

## V.  Conclusion

For the reasons set forth above, the Magistrate Judge recommends:

(1) Plaintiffs' Motion to Compel (Doc. No. 64) be DENIED;

(2) The United States' Motion for Protective Order (Doc. No. 68) be GRANTED;

(3) Plaintiffs' Motion to Hold the Government's Motion for Protective Order in Abeyance

(Doc. No. 70) be DENIED;

25

(4) Plaintiffs' Motion to Compel Discovery from the Government to Authorize the Release of the NDIC Comments to the Schulz Manuscript or, in the Alternative, for the Government to Produce the Unredacted Comments (Doc. No. 82) be DENIED;

(5) Plaintiffs' Motion to Compel the Government to Produce Special Agent Pendleton for Deposition or, in the Alternative, to Produce Special Agent Kessler for Deposition (Doc. No. 86) be DENIED; and

(6) Plaintiffs' Motion for Order Compelling Defendant Schulz to Execute a Privacy Act Waiver or, in the Alternative, for an Order Directing the United States Army War College to Release Information Regarding Donald E. Schulz (Doc. No. 88) be DENIED.


Nancy A. Vecchiarelli
U.S. Magistrate Judge


Date: October 25, 2002


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

26