

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| LAREDO NATIONAL BANCSHARES, INC., et al., | ) ) ) | Civil Action No. 1:00-2081 |
| Plaintiffs, | ) ) ) ) ) | Judge Lesley Wells<br>Magistrate Judge Nancy Vecchiarelli |
| v. | ) ) ) ) ) ) ) ) ) ) ) | **UNITED STATES' RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S NOVEMBER 4, 2002 REPORT AND RECOMMENDATION** |
| DONALD E. SCHULZ, | ) ) | |
| Defendant. | ) | |

## INTRODUCTION

On November 4, 2002, Magistrate Judge Vecchiarelli ("MJ") issued a Report and Recommendation ("R & R") correctly recommending that the Court deny Plaintiffs' Motion to Strike the Declaration of Rogelio Guevara, or in the Alternative, for an Order Permitting

Plaintiffs to Take his Deposition ("Motion to Strike"). Mr. Guevara's declaration was submitted by the United States in support of the Drug Enforcement Administration's ("DEA") formal claim of law enforcement privilege over the White Tiger Executive Summary ("Executive Summary"). Plaintiffs' Objections to the R & R ("Plaintiffs' Objections") make no reference to the MJ's sound findings of fact and conclusions of law. Instead, plaintiffs merely repeat the flawed arguments presented in their Motion to Strike and argue, for the first time, that Mr. Guevara lacks authority to assert the law enforcement privilege on behalf of DEA. Plaintiffs' arguments lack merit and provide no basis for the Court to strike Mr. Guevara's declaration.

Plaintiffs mistakenly assume that only the head of the agency is permitted to invoke privilege on behalf of the agency. In fact, recent circuit court opinions support DEA's selection of Mr. Guevara, DEA's Chief of Operations, as the official of sufficiently high authority that is in the best position to advise the Court on the applicability of the privilege to the Executive Summary. Additionally, as the MJ correctly found, plaintiffs have presented no basis to undermine the credibility of Mr. Guevara's declaration, which is properly based on personal consideration of the information contained in the Executive Summary, nor have plaintiffs justifed their request to take his deposition. Plaintiffs' incorrectly read Mr. Guevara's declaration as a statement about or accusation against them. In fact, the declaration is purposefully silent with respect to any individual or individuals that may or may not be targets of ongoing criminal investigations. Plaintiffs' attempt to turn DEA's proper assertion of privilege into an intentional effort to harm them is unwarranted. Because Mr. Guevara's declaration properly effects DEA's formal assertion of privilege over the Executive Summary, plaintiffs' motion to strike should be denied.

## ARGUMENT

I. ROGELIO GUEVARA, DEA'S CHIEF OF OPERATIONS, HAS SUFFICIENT AUTHORITY TO ASSERT THE LAW ENFORCEMENT PRIVILEGE ON BEHALF OF DEA

Plaintiffs' contention that Mr. Guevara, Chief of Operations of DEA, lacks sufficient authority to assert the law enforcement privilege on behalf of DEA "mistakenly assumes that only assertion by the head of the <u>overall</u> department or agency is enough" to formally invoke the privilege. See <u>Landry v. Federal Deposit Insur. Corp.</u>, 204 F.3d 1125, 1135 (D.C. Cir. 2000) (emphasis in original). Recent circuit court opinions hold to the contrary. A declaration by an official of sufficiently high authority who has direct oversight over the matters at issue and has carefully considered the particular information sought to be protected satisfies the requirements for a formal assertion of privilege.

As the Circuit Court of the District Columbia has recently explained, in light of the policy objectives underlying the procedural requirements for a formal assertion of privilege, "it would be counterproductive to read "head of the department" in the narrowest possible way." See <u>Landry</u>, 204 F.3d at 1135 (citing cases in which courts permitted officials other than the head of the agency to invoke privilege). The requirement that a formal claim of privilege be supported by a declaration from the head of the agency is designed "to insure that the privilege is claimed by someone in the executive branch with sufficient authority and responsibility so that the court can rely upon his judgment that the claim was prudently invoked." See <u>Nat'l Lawyers Guild v. Attorney General</u>, 96 F.R.D. 390, 396 (S.D.N.Y. 1982) (reviewing procedural requirements applicable to governmental privileges). Additionally, this declaration must be based on actual personal consideration by the official, and must be sufficiently detailed to sustain the claim. See

- 3 -

United States v. Reynolds, 345 U.S. 1, 7-8 (1953). The D.C. Circuit explained:

> Insistence on an affidavit from the very pinnacle of agency authority would surely start to erode the substance of "actual personal" involvement." Further, [these] privileges advance important goals; the gains from imposing demands in the interest of careful assertion must be balanced against the losses that would result [from] imposing superstringent procedures."

Id. at 1135-36 (internal quotations and citations omitted). In Landry, the Court found that an affidavit from the head of the appropriate regional division of the Federal Deposit Insurance Corporation's ("FDIC") supervisory personnel was sufficient to invoke the law enforcement and deliberative process privileges on behalf of the FDIC.

While there are instances in which courts have recognized that an affidavit from the head of the agency is required in order to sustain a claim of privilege, this requirement is relaxed where the underlying policy objectives are fully satisfied by a declaration from an official other than the head of the agency. Where an official of sufficiently high authority and responsibility to exercise prudent judgment on the agency's behalf has official responsibility over the information sought to be protected, further review by the head of the agency "would be of little or no benefit" to the Court. See Assoc. for Women in Science v. Califano, 566 F.2d 339, 348 (D.C. Cir. 1977) (United States' Attorney for District of Columbia's assertion sufficient to sustain claim of privilege on behalf of Department of Health, Education, and Welfare). Accordingly, courts have permitted officials other than the head of the agency to formally invoke privilege on the agency's behalf. See also Branch v. Phillips Petroleum Co., 638 F.2d 873 (5th Cir. 1981) (assertion of privilege by the director of the Equal Employment Opportunity Commission's Houston district office sufficient to sustain EEOC's claim); Yang v. Reno, 157 F.R.D. 625 (M.D. PA 1994) (any member of the National Security Council ("NCS") is qualified to invoke executive privilege in

connection with NCS related material which falls within the province of their authority and expertise; an affidavit from the President, who presides over the NCS is not required).[1]

Mr. Guevara, DEA's Chief of Operations, is the agency official of sufficiently high authority that is in the best position to exercise judgment over and advise the court regarding the sensitivity of the information contained in the Executive Summary. Chief of Operations is the third ranking position in DEA, subordinate to the Deputy Administrator and the Administrator. Chief of Operations is also the custodian of records for all criminal investigation files maintained by the agency and is in charge of DEA criminal investigations world wide. As stated in Mr. Guevara's declaration, the Operations Division of DEA "provides overall coordination and guidance to DEA field offices throughout the world" on DEA's drug enforcement operations. See Guevara Declaration, attached as Exhibit A to United States' Reply in Further Support of its Motion for Protective Order (docket entry no. 92). Accordingly, he is the official authorized to assert privilege over law enforcement information. Moreover, with direct oversight of all ongoing criminal investigations being conducted by DEA, Mr. Guevara is the only person of high ranking authority that is in a position to exercise judgment over these records. Further consideration by the Administrator or, as plaintiffs suggest, the Attorney General would be of no benefit to the Court. DEA has properly invoked its privilege over the information contained in

---

[1] Even Coastal Corp. v. Duncan, 86 F.R.D. 514 (D. Del. 1980), the sole case relied upon by plaintiffs, recognized that "the policy interests behind the requirement that the agency head assert the privilege after personal consideration" are the most important factor in determining whether an agency has properly invoked a privilege. See Duncan, 86 F.R.D. at 518. Moreover, the district court in Duncan did not dispute its previous opinion that "neo-literal compliance with the requirement that an agency head act in this context is unnecessary." See id. at 517 (citing its opinion in Smith v. Fed. Trade Comm'n, 403 F. Supp. 1000 (D. Del. 1975)).

the Executive Summary.[2]

## II. PLAINTIFFS' ATTEMPT TO UNDERMINE THE CREDIBILITY OF MR. GUEVARA'S DECLARATION, WHICH IS PURPOSEFULLY SILENT WITH RESPECT TO ANY SPECIFIC SUBJECTS OF ONGOING INVESTIGATIONS, FAILS

As the MJ correctly found, plaintiffs have presented no basis to question Mr. Guevara's credibility. Ironically, after first contending that Mr. Guevara lacks sufficient authority to invoke DEA's privilege, plaintiffs argue that Mr. Guevara lacks requisite personal knowledge of the matters addressed in his declaration. As discussed above, Mr. Guevara, as Chief of Operations, is responsible for oversight of all DEA drug enforcement operations. Thus, he is well informed with respect to the subject matter at issue in the Executive Summary. Indeed, he is the person of sufficiently high authority in the agency that is in the best position to advise the Court on the applicability of the privilege. Moreover, as the MJ explained, "[t]here is no requirement that, to assert a privilege, the official must have 'personal knowledge' of the matter. Rather, the requirement is that the official give 'actual personal consideration' to the matter; and Guevara gave actual personal consideration to the matter." See R & R at 2.

As explained in the United States' opposition to plaintiffs' motion, the declaration of Mr. Guevara is purposefully silent with respect to any individual or entity that may or may not be the

---

[2]Plaintiffs additionally challenge Mr. Guevara's declaration based on the mistaken notion that he is asserting privilege on behalf of the National Drug Intelligence Center. See Plaintiffs' Objections at 7-8. Mr. Guevara's declaration is submitted in support of DEA's assertion of privilege over the information contained in the Executive Summary. The NDIC separately invoked its claims of privilege over the Executive Summary pursuant to the declaration of the director of the agency, Michael T. Horn. Moreover, DEA can properly assert privilege over information that originated in its investigative files gathered for law enforcement purposes, which has been subsequently compiled into a new document by another agency. The privilege tracks the information. See Fed. Bureau of Investigation, et al. v. Abramson, 456 U.S. 615 (1982). Plaintiffs present no challenge to this authority.

subject of ongoing criminal investigations.[3] The declaration is properly drafted to provide the Court with sufficient information to assess DEA's assertion that the information contained in the Executive Summary is subject to the law enforcement privilege, without disclosing the very information the privilege is designed to protect. See Reynolds, 345 U.S. at 8 (recognizing that claims of privilege must be evaluated by courts "without forcing disclosure of the very thing the privilege is designed to protect."). Plaintiffs attempt to turn DEA's proper assertion of privilege into an intentional effort to mislead the public or harm the plaintiffs is unwarranted.[4]

Finally, as the MJ explained, plaintiffs have presented no evidence that contradicts Mr. Guevara's declaration or justifies plaintiffs' request to depose him. The testimony of Sergeant Linda Morris is not inconsistent with Mr. Guevara's declaration. See R & R at 3-4. See also United States' Opposition at 4.[5] Plaintiffs also grossly misrepresent the March 21, 2000 letter

---

[3]The United States' respectfully refers the Court to its Opposition to Plaintiffs' Motion to Strike the Declaration of Rogelio Guevara or, in the Alternative, for an Order Permitting Plaintiffs' to Take His Deposition ("United States' Opposition"), docket entry no. 100, which fully addresses plaintiffs' effort to undermine Mr. Guevara's credibility.

[4]It is evident from the Jamie Dettmer article, "DEA's 'White Tiger' Still on the Prowl," referenced by plaintiffs that plaintiffs are alone in their reading of Mr. Guevara's declaration as a statement about them. This article, which discusses the declaration, makes no mention of plaintiffs. See exhibit 1 attached to Plaintiffs' Objections to Magistrate Judge's October 25, 2002 Report and Recommendation, docket entry no.111.

[5]As stated in the United States' Opposition:

> The testimony of Sargent Morris, to the extent it is relevant to the Court's consideration of this issue, provides further support for DEA's assertion of privilege and the United States' efforts to shield the Executive Summary from disclosure. Sargent Morris maintains the final draft of the White Tiger Executive Summary in a locked file cabinet, in order to guard against the significant harms that would result from disclosure. See Exhibit 1 to Plaintiffs' Motion to Strike ("Morris depo.") at 80-81. Contrary to plaintiffs suggestion, Sargent Morris' personal critique of the way an early draft of the Executive Summary, preceding the March 1999 draft, was written or her disdain for anything that reminds her

signed by the former Attorney General when they state that "the Attorney General has disavowed . . . the investigation." <u>See</u> Plaintiffs' Objections at 13. This letter, attached to plaintiffs' complaint as exhibit A, refers only to the NDIC's White Tiger Project; it does not address the underlying investigations by law enforcement agencies.[6]

High-level officials of federal agencies may not be routinely compelled to appear and testify at depositions. <u>See, e.g.</u>, <u>United States v. Morgan</u>, 313 U.S. 409, 422 (1941); <u>Simplex Time Recorder Co. v. Secretary of Labor</u>, 766 F.2d 575, 586-87 (D.C. Cir. 1985). Such a deposition is particularly inappropriate where, as here, the only asserted purpose of the deposition is to inquire directly into the matters intended to be protected by assertion of the privilege. <u>See</u> <u>Foster v. United States,</u> 12 Cl.Ct. 492, 496 (1987) (rejecting plaintiffs' efforts to depose director of the CIA to have him justify a privilege assertion). The MJ correctly recommends that plaintiffs should not be permitted to depose Mr. Guevara regarding his assertion of privilege. <u>See</u> R & R at 5 ("It appears [plaintiffs] wish to question Mr. Guevera on his discretionary assertion of privilege. This is counter to cautions enunciated by the courts.").

---

of the unfortunate leak of the March 1999 Executive Summary to the media says nothing about the ongoing sensitivity of the information contained therein. In addition, the mere fact that no formal charges have yet arisen out of the underlying investigations does not undermine the likelihood of harm to ongoing investigative efforts. If anything, Sargent Morris' efforts to safeguard the contents of the Executive Summary corroborates the United States' endeavor to shield this document from disclosure.

[6]It is important to note that the NDIC is not directly involved in any White Tiger "investigations." The NDIC conducts no law enforcement investigations of its own and possesses no investigatory authority.

## CONCLUSION

For all of these reasons, and those previously set forth, the Court should enter an order denying plaintiffs' motion to strike the declaration of DEA Chief of Operations Rogelio Guevara, or in the alternative, for an order permitting plaintiffs to take his deposition, in accordance with the recommendations of the MJ.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

ELIZABETH J. SHAPIRO (DC Bar No. 418925)
Assistant Branch Director

_____
SARA W. CLASH-DREXLER (PA Bar #86517)
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Ph. (202) 514-3481
Fax (202) 616-8460
sara.clash-drexler@usdoj.gov

Dated: December 2, 2002

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the *United States' Response to Plaintiffs' Objections to Magistrate Judge's November 4, 2002 Report and Recommendation* was served by facsimile and First Class Mail, postage prepaid, this 2nd day of December 2002, on:

Patrick M. McLaughlin, Esq.
McLaughlin & McCaffrey, LLP
Eaton Center, Suite 1350
1111 Superior Avenue
Cleveland, OH 44114-2500

Philip J. Weaver, Esq.
Smith, Marshall, Weaver and Vergon
500 National City East Sixth Building
1965 East Sixth Street
Cleveland, Ohio 44114

SARA W. CLASH-DREXLER