**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Laredo National Bancshares Inc., et al., ) | Civil Action No. 1:00 CV 2081 |
| ) | |
| ) | Judge Lesley Wells |
| Plaintiffs, ) | Magistrate Judge Nancy Vecchiarelli |
| ) | |
| vs. ) | **Reply to the Government's** |
| ) | **Responses to Plaintiffs' Objections** |
| Donald E. Schulz, et al., ) | **to the Magistrate Judge's Reports** |
| ) | **And Recommendations** |
| Defendants. ) | |
| ) | |

### Preliminary Statement

On December 26, 2002 this Court entered a marginal order (non-document) denying plaintiffs' motion to strike the government's responses (related document no. 117) to plaintiffs' objections to the reports and recommendations.  The Court granted leave within which to file a reply on or before January 7, 2003.  Plaintiffs hereby reply to the government's responses to plaintiffs' objections to the Magistrate Judge's reports and recommendations.

**A.      The October 25, 2002 Report and Recommendation**

The government argues that the Magistrate Judge's October 25, 2002 report and recommendation should be upheld.  As demonstrated in plaintiffs' objections, the report and recommendation went far beyond the relief sought by the government and fails to take into account plaintiffs' burden to prove the allegations set forth in their complaint.

The allegations against the defendant are, in essence, that he unlawfully obtained a predecisional, unvetted, draft law enforcement sensitive document and disseminated it to Dolia Estevez, a Washington/Virginia based Mexican national who holds herself out to be a member of the media, who then published the false and

fraudulent information. Defendant Schulz has testified under oath that he obtained the draft, law enforcement sensitive document and, in fact, disseminated that document to Dolia Estevez, but this is insufficient to prove all the elements of plaintiffs' claims. In order to prove that defendant Schulz is liable for the unlawful disclosure and dissemination of the draft executive summary and the damages that resulted from its publication in the public domain, plaintiffs must prove that the contents of the executive summary were actually published. In order to do so, the plaintiffs must have access to the portions of the draft executive summary which relate to them. How else may plaintiffs specifically tie the language within the draft executive summary to the defamatory and blatantly false statements associating them with criminal conduct as published in various news reports?

The Magistrate Judge recommends that redaction of the executive summary is not a reasonable alternative. However, no explanation or analysis for this conclusion is offered. Plaintiffs submit that due to the nature of the claims, and since defendant Schulz continues to maintain and make use of the document, that they should be entitled to, at a minimum, a redacted copy of the executive summary setting forth the information within the document related to these plaintiffs.[1] Redaction would, therefore,

---

[1] Defendant Schulz in his reply to the government's response to both parties' objections to the Magistrate Judge's October 25, 2002 report and recommendation states the case for *in camera* review of the draft executive summary by this Court. Since plaintiffs and their counsel are the only litigants in this action not in possession of a copy of the draft executive summary, we are, so to speak, at the mercy of those in possession of the document. In defendant's reply (document no. 115), counsel argues that "a focused *in camera* review" would demonstrate that "redaction is a viable remedy" in this matter. Certainly, the disclosure of a redacted draft executive summary to the plaintiffs cannot possibly present a problem for the government since, *inter alia,* (i) the draft executive summary and the NDIC's White Tiger Project were both disavowed and terminated by the Attorney General of the United States; (ii) the draft was written four (4) years ago and no investigative action has resulted from the disavowed language of the report as it may relate to plaintiffs; (iii) because of the actions of government officials the NDIC draft executive summary was intentionally and willfully provided to the news media for publication; and (iv) news reports purportedly quoted directly from the disavowed document causing incalculable damage and injury to plaintiffs. If the disavowed document nevertheless contains names of other, unrelated individuals or entities currently under investigation, those materials can be easily redacted. But this should serve as no justification for the government's argument, or the Magistrate Judge's recommendation, that redaction is not a reasonable alternative.

narrowly tailor the disclosure to the claims at issue in this case, and protect the information related to other individuals and entities which may appear in the draft executive summary.

The Court might also consider an appropriate protective order to preclude the further dissemination of the redacted version of the executive summary. Such protective order would limit the distribution of the redacted executive summary to counsel and an appropriate client representative and limit its use to this and other related actions. If the Court is inclined to redact the document, subject to an appropriate protective order, the plaintiffs would agree to prepare the first draft of the protective order for circulation to the Court and the government for review and comment.[2]

### B.    The November 4, 2002 Report and Recommendation

Plaintiffs respectfully submit that the declaration of Rogelio Guevara, recently named DEA's Chief of Operations, should be stricken from the record. Plaintiffs demonstrated to the Court in the objections to the November 4, 2002 report and recommendation that Mr. Guevara lacked the requisite standing to invoke the privilege on behalf of the NDIC, a sub-agency of the Department of Justice independent from the DEA. The government side steps responding to this argument by relegating its

---

[2] In addition to the draft executive summary, plaintiffs have moved to compel the production of the 8-page comments to Schulz' manuscript in an unredacted form. *See* government's response to both parties' objections to Magistrate Judge's October 25, 2002 report and recommendation, at page 8. The government asserts that this Court is without jurisdiction to compel the production of the unredacted comments because the NDIC's decision to produce the comments in redacted form is only reviewable pursuant to a separate action brought under the Administrative Procedure Act. *Id.* at 9. The government misconstrues the plaintiffs' argument. The motion to compel was directed at defendant Schulz, rather than the government, and requested the Court compel Dr. Schulz to produce the unredacted comments that he has in his possession. Only in the alternative, did plaintiffs request the Court to compel the NDIC to produce the unredacted comments. Accordingly, this Court clearly has jurisdiction to compel defendant Schulz to produce that relevant and necessary document which he maintains in his possession. The government's recitation of the Administrative Procedure Act is irrelevant to the motion to compel.

comment to footnote 2, page 6 of its opposition. (document no. 116)  Notwithstanding the highly offensive language to plaintiffs of Mr. Guevara's declaration, the government observes that plaintiffs challenge the declaration "Based on the mistaken notion that he is asserting privilege on behalf of the National Drug Intelligence Center."  The government submitted Mr. Guevara's declaration to do precisely that, which is apparent from a reading of the declaration itself and in the recognition that the draft executive summary was prepared by the NDIC (and not the DEA).

The government asserts now for the first time that Mr. Guevara's declaration was submitted "in support of DEA's assertion of privilege over the information contained in the Executive Summary."  *Id.*  It is then conveniently argued that "The privilege tracks the information." *Id.*[3]

Even if one reads the *Abramson* case as broadly as the government, this record provides no safe harbor for reliance upon the argument that "The privilege tracks the information."

In *Federal Bureau of Investigation v. Abramson*, 456 U.S. 615 (1982), the United States Supreme Court held simply that "information initially contained in a record made for law enforcement purposes continues to meet the threshold requirements of

---

[3] Let's follow the logic of the government's new argument.  Since failure to invoke a privilege in a timely and formal manner will waive the privilege, this must mean that any other law enforcement agency providing "information" to the NDIC which was then incorporated into the draft executive summary has waived the assertion of any privilege with respect to the disclosure of that information.  Otherwise, we would have seen declarations from the appropriate officials of the Federal Bureau of Investigation ("FBI"), U.S. Customs Service ("USCS") and others who may have provided information contained in the draft executive summary.  *See* January 20, 2000 declaration of Director Michael T. Horn, attached as Exhibit B to the complaint. Therefore, based on the evidence in this record, and in consideration of the government's new argument, any other federal agency supplying "information" to the NDIC which is contained in the draft executive summary has waived the assertion of any privilege it may have had in that "information".  Or, another fair reading of the evidence in this record is that other law enforcement agencies have considered the matter and determined that the assertion of privilege as to the information is unwarranted and unjustified because the information with respect to the plaintiffs is both unworthy of the assertion of privilege and can no longer be justified by any claim that an investigation is ongoing with respect to these plaintiffs.

4

Exemption 7 [under FOIA] where that recorded information is reproduced or summarized in a new document prepared for a non-law-enforcement purpose." *Id*. at 632. In that case, a journalist filed a Freedom of Information Act request with the FBI seeking documents that it transmitted to the White House. *Id*. at 619. The information conveyed related to political opponents of the Presidential Administration. *Id*. The specific request at issue was for a certain cover letter from the FBI to the White House which enclosed certain "name check" summaries containing information culled from FBI files on the individuals in question, together with certain attached documents. *Id*. at 620. The Court held that this information, in the hands of the originating agency, the FBI, was still protected by Exemption 7 of FOIA (which exempts disclosure of "investigatory records compiled for law enforcement purposes" when the release of such records would "constitute an unwarranted invasion of personal privacy.").

The government argues in footnote 2 of its response that the DEA can properly assert a privilege over information transferred to another agency. *Abramson* is not that broad. In *Abramson*, the originating agency was the subject of the FOIA request. Nowhere in the *Abramson* opinion does the Supreme Court hold that "The privilege tracks the information", as asserted by the government. Instead, the Supreme Court holds that the standard analysis under Exemption 7 must be applied to any assertion of the law enforcement investigative privilege. *Id*. at 632. "Of course, it is the agency's burden to establish that the requested information originated in a record protected by Exemption 7." *Id*. In *Abramson*, the parties stipulated that the information as originally compiled was exempt. *Id*. at 631. Plaintiffs here, with respect to the information related to themselves, do not concede that the records at issue are exempt, and in fact have demonstrated that any such investigatory privilege has been waived and undermined by the passage of time and disclosure. Finally, this is not a FOIA case.

5

Let us look at the record before this Court. The government has argued forcefully throughout that the NDIC compiled law enforcement sensitive information as well as public source information into a massive database containing 100,000 pages of documents. *See* January 20, 2000 declaration of Horn at ¶ 6, attached as Exhibit B to the complaint. Reports and other information came in from a wide variety of agencies including: "DEA, FBI, U.S. Customs, and the United States Attorney's office." Therefore, on this record, the DEA is only one of many law enforcement and intelligence agencies which may have contributed information contained in the 100,000 page White Tiger Project database at the NDIC, and which then evolved into information contained in the draft executive summary in which plaintiffs are improperly accused. *Id.* The government, which has the burden of proof to establish the existence of a valid privilege, has completely failed, on this record, to demonstrate to the Court that any information provided to the NDIC by the DEA with respect to these plaintiffs is, in fact, contained in the draft executive summary. How is this Court to know whether Mr. Guevara's declaration is actually an attempt to assert privilege over "information" supplied to the NDIC by some agency other than the DEA?[4]

Accordingly, the government's argument that Mr. Guevara has standing to assert privilege "over information that originated in [DEA's] investigative files gathered for law enforcement purposes," is merely hypothetical since the government has presented no

---

[4] Plaintiffs are willing to presume that if the DEA provided information to the NDIC which subsequently ended up in the draft executive summary then that information would logically relate to established drug trafficking organizations and multinational drug trafficking cartels which have absolutely nothing to do with, and are not about these plaintiffs. The plaintiffs have no interest in those drug cartels or drug kingpins. This lawsuit is not about those criminals (or alleged criminals): it is about these plaintiffs. Mr. Guevara's declaration provides no evidence that the DEA provided any "information" relevant to these plaintiffs which is contained in the draft executive summary.

6

evidence on this record that Mr. Guevara has done so for any such "information" relating to <u>these</u> <u>plaintiffs</u>. It must be clear that Mr. Guevara lacks the requisite standing to invoke a privilege on behalf of another law enforcement agency.

If such evidence were submitted, it would be relevant to inquire whether DEA provided 95% or 5% of the "information" contained in the draft executive summary. That inquiry would be relevant certainly to the question of whether redaction of "information" irrelevant to plaintiffs and this lawsuit could be appropriately made by the Court.

The government now casts further doubt on the validity of the declaration submitted by NDIC director Michael Horn by advising the Court that:

> It is important to note that the NDIC is not directly involved in any White Tiger "investigations." The NDIC conducts no law enforcement investigations of its own and possesses no investigatory authority.

*See* document no. <u>116</u>, at 8, fn 6. What then is the standing of Mr. Horn to assert a law enforcement privilege on behalf of "information" contained in the draft executive summary not originating at the NDIC?

Plaintiffs submit that the factual record made by the government in this case fails to stand up to the authorities cited by the government in support of its legal positions. Declarations filed by the Department of Justice in this (or any) case should be carefully constructed and submitted only by an official with the requisite standing as both the head of the responsible agency <u>and</u> only as to information relevant to the privilege asserted which emanates from his or her agency. We submit this record demonstrates that the government has failed to meet this well established, high, and threshold burden necessitating the striking of Rogelio Guevara's improper declaration from this record.

7

## **Conclusion**

For the reasons set forth herein and in plaintiffs' objections to the reports and recommendations, plaintiffs submit they are entitled to a redacted version of the draft executive summary; that defendant Schulz be compelled to produce the 8-page comments to his draft manuscript; that Mr. Guevara's declaration be stricken since he is not the head of the DEA and because he lacks the requisite standing to invoke a privilege on behalf of a document prepared by another federal agency.

Respectfully submitted,

/s/ Patrick M. McLaughlin
Patrick M. McLaughlin (0008190)
John F. McCaffrey (0039486)
Colin R. Jennings (0068704)
McLAUGHLIN & McCAFFREY, LLP
Eaton Center, Suite 1350
1111 Superior Avenue
Cleveland, Ohio 44114-2500
(216) 623-0900 - Telephone
(216) 623-0935 - Facsimile
pmm@paladin-law.com

Ricardo G. Cedillo (*pro hac vice*)
Jason R. Cliffe (*pro hac vice*)
DAVIS, CEDILLO & MENDOZA, INC.
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78216
(210) 822-6666 - Telephone
(210) 822-1151 – Facsimile

Counsel for plaintiffs Gary G. Jacobs, The Laredo National Bank, and Laredo National Bancshares, Inc.

**Certificate of Service**

A copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy has also been served by facsimile and Regular U.S. Mail upon Sara W. Clash-Drexler, Trial Attorney, Civil Division, U.S. Department of Justice, 901 E Street, Room 802, Washington, D.C. 20004 on this the 7th day of January, 2003.

                                       /s/ Patrick M. McLaughlin
                                       Patrick M. McLaughlin