**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LAREDO NATIONAL, | ) | Case No. 1:00 CV 2081 |
| BANCSHARES, INC., *ET AL.*, | ) | |
| | ) | The Honorable Lesley Wells |
| Plaintiff, | ) | United States District Judge |
| | ) | |
| v. | ) | **RESPONSE OF UNITED STATES** |
| | ) | **OF AMERICA IN OPPOSITION TO** |
| DONALD E. SCHULZ, *ET AL.*, | ) | **DEFENDANT SCHULZ'S MOTION FOR** |
| | ) | **PAYMENT OF ATTORNEY'S FEES,** |
| Defendants | ) | **EXPENSES AND COSTS** |
| | ) | |

**COMES NOW** the United States of America, a non-party to this action, and respectfully

submits this response in opposition to the motion of Defendant Donald E. Schulz (Dkt. No. 133),

which seeks an award of attorney's fees, expenses, and costs against the United States.

### I. INTRODUCTION AND BACKGROUND

In their complaint filed on August 15, 2000 (Dkt. No. 1), Plaintiffs asserted claims for money

damages against Mr. Schulz based on his alleged violations of state tort law; the Privacy Act, 5

U.S.C. § 552a; and the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§

1962(c), 1964(c).  Plaintiffs alleged that Mr. Schulz committed these violations by procuring a draft

of a National Drug Intelligence Center ("NDIC") report, which implicated the Plaintiffs in illegal

1

activity, and then "leaking" the draft report to the media, which published articles about the report.

As the claims against Mr. Schulz arose from events occurring during his employment with the United States Army, he requested the United States Justice Department to represent him in the case.  *See* Mot. for Attorney's Fees, Ex. F (Dkt. No. 133).  In a letter dated October 26, 2001, the Justice Department advised the Army that it had denied Mr. Schulz's representation request in light of the criteria set forth in 28 C.F.R. § 50.15.  *Id.*, Ex. H.  The Justice Department further advised that it could not certify that the conduct for which Mr. Schulz had been sued occurred in the scope of his employment and that, as a consequence, the United States could not be substituted as a defendant for Mr. Schulz pursuant to the Westfall Act, 28 U.S.C. § 2679.  *Id.*[1]  In a letter dated November 16, 2001, the Army advised Mr. Schulz of the Justice Department's decision.  *Id.*, Ex. G.

Although Mr. Schulz could not have challenged the Justice Department's decision to deny his representation request, *see infra* n.3, he still could have sought review of the Justice Department's separate Westfall Act determination.  Where, as here, the Attorney General refuses to provide the "scope of employment" certification necessary to effect the United States' substitution as a defendant in place of a federal employee, *see supra* n.1,

---

[1]  The Westfall Act renders federal employees absolutely immune as to certain types of damages claims arising from conduct undertaken in the scope of employment.  The Act "confers such immunity by making" an action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, "the exclusive remedy for torts committed by Government employees in the scope of their employment." *United States v. Smith*, 499 U.S. 160, 163 (1991).  *See* 28 U.S.C. § 2679(b)(1).  (Under § 2679(b)(2), however, this immunity does not extend to claims alleging violations of the United States Constitution and certain federal statutes.)  Upon certification by the Attorney General, or his designee, *see* Appendix to 28 C.F.R. §15.3; or upon certification by the Court, that the employee acted in the scope of employment at the time of the incident in question, the employee is dismissed from the action, the United States is substituted as the party-defendant, and the action proceeds against the United States to the extent permitted by the FTCA.  *See* 28 U.S.C. § 2679(d)(1); (d)(3); (d)(4).

2

the employee may *at any time before trial* petition the court to find and certify that the employee was acting within the scope of his office or employment.  Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.  A copy of the petition shall be served upon the United States in accordance with the provisions of Rule 4(d)(4) of the Federal Rules of Civil Procedure.

28 U.S.C. § 2679(d)(3)(emphasis added).

If Mr. Schulz had timely filed a certification petition in this Court, and the petition had been granted, then certain of Plaintiffs' claims would have been "deemed" as lying only against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680,[2] and that part of the case would have "proceed[ed] in the same manner as any [FTCA] action against the United States" and been "subject to the limitations and exceptions applicable to" FTCA actions.  28 U.S.C. § 2679(d)(4).  Accordingly, in that instance, the United States would have been free to seek its dismissal, immediately upon its substitution, and "assert any . . . defenses to which [it] is entitled."  28 U.S.C. § 2674.

Mr. Schulz, however, did not avail himself of the procedure described in 28 U.S.C. § 2679(d)(3).  Rather, after learning in November 2001, that the Attorney General would not issue a "scope of employment" certification under the Westfall Act, Mr. Schulz sought *no* relief under § 2679(d)(3) and, instead, chose to proceed with the litigation and defend the claims against him with the aid of private counsel.  Indeed, the parties wrangled over discovery issues for more than a year

---

[2] The United States could not have been substituted as a defendant on Plaintiffs' RICO claims because they alleged a "violation of a statute of the United States" that authorized an "action against an individual."  28 U.S.C. § 2679(b)(2)(B).  *See Timberline Northwest, Inc. v. Hill*, No. 96-35763, 1998 WL 123119 **1-2 (9th Cir. Mar. 17, 1998)(Westfall Act did not allow district court to substitute United States as defendant on RICO claims).  Thus, even if a "scope of employment" certification had been issued for Mr. Schulz, he would have remained a defendant on the RICO claims.

3

after Mr. Schulz learned of the Justice Department's Westfall Act determination, *see* Dkt. Nos. 63-124, and ultimately settled the case in April 2003.  *See* Dkt. Nos. 125-127.  At no time during this period, and at no time prior to the District Court's order of April 15, 2003, which approved the parties' settlement and closed the case, *see* Dkt. No. 128, did Mr. Schulz ever invoke § 2679(d)(3), or request the Court to certify "scope of employment" and substitute the United States as a defendant for him.

According to the docket report, the aforementioned order--styled as an "Order Granting Joint Motion for Entry of a Judgment and Permanent Injunction and Order of Permanent Injunction and Judgment Entry" –closed the case on April 15.  In that order, the Court directed that "[j]udgment shall be entered" against Mr. Schulz on certain of Plaintiffs' claims in the amount of $8 million, Dkt. No. 128, at 1, ¶ 1, and it "permanently enjoined" Mr. Schulz from disseminating the draft NDIC report and ordered him to return his copies of the report to the Justice Department.  *Id*. at 2, ¶ 2. Although the Court directed that "[e]ach party shall bear its own costs," *id*. at 3, ¶ 8, it "retain[ed] jurisdiction for a period of six (6) months within which to consider a motion for attorney's fees and expenses filed by defendant [*i.e.*, Mr. Schulz] against the United States."  *Id*. at 3, ¶ 7.

More than four months later, on August 29, 2003, Mr. Schulz filed the instant motion seeking attorney's fees from the United States, which is not now, and has never been, a party to this action. In that motion, and for the first time in this litigation, Mr. Schulz asserts error in the Justice Department's refusal to certify his "scope of employment" under the Westfall Act and complains that this "incorrect" decision "caused [him] to incur substantial attorney fees, expenses and costs."  Mot. for Attorney's Fees at 9 (Dkt. No. 133).  Mr. Schulz seeks "an order finding that he was acting within the scope of his employment and is entitled to reimbursement of attorney's fees, expenses and costs

4

incurred in defending this action and in bringing this motion." *Id.* at 2-3.[3]

The United States opposes Mr. Schulz's motion on three grounds. First, the motion should be denied because the United States is not a party to this litigation, and Mr. Schulz cites no authority permitting an award of attorney's fees against a non-party in the circumstances presented here. Second, the motion should be denied because the United States has sovereign immunity as to any claim for attorney's fees, and Mr. Schulz identifies no applicable federal statute that waives the United States' sovereign immunity or otherwise authorizes a fee award. Third, the motion should be denied because it is untimely under Fed. R. Civ. P. 54(d). For these reasons, Mr. Schulz's motion should be denied as a matter of law.

## II. DISCUSSION

### A.    As a non-party, the United States cannot be liable for attorney's fees.

In the United States, parties to federal litigation are generally required to bear their own attorney's fees. *See Key Tronic Corp. v. United States*, 511 U.S. 809, 814-15 (1994); *Runyon v. McCrary*, 427 U.S. 160, 185 (1976); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). This "American Rule," however, is subject to limited exceptions. Fee awards may be

---

[3] The United States does not read Mr. Schulz's motion as also challenging the Justice Department's separate decision to deny his request for representation based on the criteria in 28 C.F.R. § 50.15. However, if the Court construes the motion this way, it should reject any challenge to the Department's decision not to represent Mr. Schulz, as that decision was committed to the Department's unreviewable discretion. *See Falkowski v. Equal Employment Opportunity Comm'n*, 764 F.2d 907, 911 (D.C. Cir.), *denying reh'g*, 783 F.2d 252 (D.C. Cir.), *cert. denied sub nom*, *Falkowski v. United States Dep't of Justice*, 478 U.S. 1014 (1986). *See also Walls v. Holland*, No. 98-6506, 198 F.3d 248 (Table), 1999 WL 993765 ** 2 (6th Cir. (Ky.) Oct. 18, 1999)(stating "the representation of the defendants by the Department of Justice is solely within the discretion of the Department and is not subject to judicial review"); *Kreines v. United States*, 33 F.3d 1105, 1108 (9th Cir. 1994)("The United States is not legally obligated to defend its employees in a *Bivens* action, nor pay any subsequent judgment. Such payments are wholly discretionary.").

allowed when they are explicitly authorized by federal statute or by one of the few common-law doctrines permitting fee awards in certain circumstances.  When such statutes or common-law doctrines apply, they may allow the party who has prevailed in the lawsuit to recover attorney's fees from the losing party.

In seeking fees from the United States, however, Mr. Schulz overlooks the fact that the United States is not even a party to this lawsuit and is certainly not a party against whom Mr. Schulz has prevailed in the litigation.[4]  Mr. Schulz cites no authority permitting a fee award against a non-party in the circumstances presented here, and he ignores the authorities that *preclude* the imposition of fee liability on non-parties.  *See*, *e.g.*, *Becker v. Blum*, 487 F. Supp. 873, 874 (S.D.N.Y. 1980)(stating court "has no power to assess an award" of attorney's fees "against non-parties"). *Accord Youell v. Grimes*, 168 F.Supp.2d 1233, 1237-38 (D. Kan. 2001)(observing that entities not joined as parties could not be liable for fees); *Nordco v. Ledes*, No. 95 CIV 7753(RJW), 1999 WL 1243883 *11 (S.D.N.Y. Dec. 21, 1999); *West Central Missouri Rural Dev. Corp. v. Arnett*, 368 F. Supp. 567, 570 (D.D.C. 1973).

Even where a party has *prevailed* in the litigation against another party,[5] the victor can seek fees, if at all, only from *that losing party*, not from some other party or a non-party.  This point is well illustrated by the Supreme Court's decision in *Kentucky v. Graham*, 473 U.S. 159 (1985).  In

---

[4]  Indeed, considering that Mr. Schulz has suffered an adverse judgment in the amount of $8 million, and has had a permanent injunction entered against him, he hardly can be seen as having prevailed in the litigation as to *anyone*.  Under the statutes and common-law doctrines permitting fee awards, one generally must be a "prevailing party" in order to state a valid claim for attorney's fees.  Mr. Schulz does not qualify as a "prevailing party" under any possible definition of the term.

[5]  It bears repeating, *see supra* n.4, that Mr. Schulz has prevailed against *no one* in this case.

*Graham*, the plaintiffs sued law-enforcement officers for alleged constitutional violations under 42 U.S.C. § 1983.  The plaintiffs also sued the Commonwealth of Kentucky, not for damages on the merits, but for attorney's fees in the event the plaintiffs prevailed against the individual officers. Early in the litigation, the Commonwealth was dismissed on Eleventh Amendment immunity grounds.  The plaintiffs and individual officers proceeded with the litigation and eventually settled. Thereafter, the plaintiffs filed a motion for attorney's fees against the Commonwealth under 42 U.S.C. § 1988, even though, at that point, the Commonwealth was no longer a party and had incurred no liability on the merits of the plaintiffs' claims.  The district court granted the plaintiffs' fee motion, and, following an affirmance by the Sixth Circuit Court of Appeals, the Supreme Court granted certiorari and reversed the fee award.

Section 1988, the statute at issue in *Graham*, permits a prevailing party in certain civil-rights actions to recover attorney's fees.  The statute does not specifically identify the parties who are potentially liable for attorney-fee awards, but, as the Court in *Graham* observed, "it is clear that the logical place to look for recovery of fees is to the losing party–the party legally responsible for relief on the merits.  That is the party who must pay the costs of the litigation, and it is clearly the party who should also bear fee liability under § 1988."  *Graham*, 473 U.S. at 164 (citation and footnote omitted).  "Thus," the Court concluded, "liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant."  *Id*. at 165 (footnote and citation omitted).

Section 1988, the Court held, "simply does not create fee liability where merits liability is non-existent."  *Id*. at 168.  The fee award against the Commonwealth, therefore, was reversed

7

because the Commonwealth had been dismissed from the case on immunity grounds and had

incurred no liability on the merits of plaintiffs' claims.  Moreover, the Court held that the fact that

the plaintiffs had prevailed against the *individual officers* in the settlement agreement provided no

basis for imposing fees on the Commonwealth.  "That a plaintiff has prevailed against one party,"

the Court reasoned, "does not entitle him to fees from another party, let alone from a nonparty."  *Id*.

at 168.[6]

Here, Mr. Schulz has not even prevailed against the Plaintiffs and certainly has not prevailed

against the United States, which is not now, and has never been, a party to this now-terminated

lawsuit.  Obviously the United States has incurred no liability on the merits of any claim asserted in

the case.  If, as *Graham* teaches, "[t]here is no cause of action against a defendant for fees absent that

defendant's liability for relief on the merits," *Graham*, 473 U.S. at 170, then surely there can be no

claim for fees against the United States where, as here, it was neither joined as a party nor found

---

[6] Following *Graham*, *supra*, the Sixth Circuit and other courts have routinely rejected attempts by litigants to recover fees from non-parties or parties who have not been prevailed against.  *See*, *e.g.*, *Heeren v. City of Jamestown*, 39 F.3d 628 (6th Cir. 1994)(where plaintiff prevailed against city in settlement agreement, his motion for fees against federal agency was properly denied where agency did not participate in settlement negotiations, was not a party to the settlement agreement, and had not been prevailed against by plaintiff); *Bergman v. United States*, 844 F.2d 353, 355 (6th Cir. 1988)(holding that, under *Graham*, "the United States cannot be liable for attorneys' fees pursuant to section 1988 merely because its employees or agents could be liable under section 1988"); *Johnson v. City of Aiken*, 278 F.3d 333, 338 (4th Cir. 2002)(where plaintiffs sued city and one of its police officers, and prevailed against city on § 1983 assault claim, the police officer's "status as a nonparty" on that claim protected him, under *Graham*, from any fee liability arising from assault claim); *Beard v. Teska*, 31 F.3d 942, 951, 953 (10th Cir. 1994)(stating that "[n]o plaintiff can ever be entitled to fees against an entity against which plaintiff did not even attempt to prevail," and that the "total noninvolvement" on the part of state agencies "in the underlying substantive dispute compels the denial of any fee award against them on any theory of direct liability"); *McNabb v. Riley*, 29 F.3d 1303, 1307 (8th Cir. 1994)(Secretary of Education could not be liable for fees, in connection with arbitration proceeding, where he was not a party to proceeding and could not be held liable by arbitration panel); *T.Y. v. State of Kansas*, 912 F. Supp. 1416, 1422 (D. Kan. 1995).

liable on the merits of any claim. Simply filing a postjudgment motion for fees against the United States, as Mr. Schulz has done, "did not create, out of whole cloth, the cause of action on the merits necessary to support this fee request." *Id.* at 170. As a threshold matter, then, in light of *Graham* and the other authorities cited herein, Mr. Schulz has no viable claim for attorney's fees against the United States.

**B.      Sovereign immunity bars Mr. Schulz's fee claim against the United States.**

The other obvious obstacle to Mr. Schulz's attorney-fee claim is the doctrine of sovereign immunity. The United States, "as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941)(citations omitted). "Sovereign immunity is jurisdictional in nature," *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475 (1994), and the "existence of consent" by the United States is "a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983)(footnote omitted). Accordingly, "[e]xcept to the extent it has waived its immunity, the Government is immune from claims for attorney's fees." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983). *Accord Bergman v. United States*, 844 F.2d 353, 355 (6th Cir. 1988); *General Dynamics Corp. v. United States*, 49 F.3d 1384, 1385-87 (9th Cir. 1995); *United States v. Horn*, 29 F.3d 754, 761 (1st Cir. 1994)(stating that, since *Ruckelshaus, supra,* "the proposition that sovereign immunity bars the recovery of attorneys' fees has become ensconced at the circuit level")(citing cases); *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1385 (Fed. Cir. 1983)(stating "the doctrine of sovereign immunity must be overcome" before court may award fees against United States).

"The power to waive the United States' sovereign immunity rests solely with Congress." *Kaffenberger v. United States*, 314 F.3d 944, 952 (8th Cir. 2003). To waive immunity, Congress

must unequivocally express its intention to do so in statutory text.  *See Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); *Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Nordic Village Inc.*, 503 U.S. 30, 33-34, 37 (1992).  A waiver "must be express, clear and unequivocal," *Reed v. Reno*, 146 F.3d 392, 398 (6th Cir. 1998), and cannot be implied.  *See Lane*, *supra*; *Library of Congress v. Shaw*, 478 U.S. 310, 320-21 (1986)(declining to imply waiver based on "policy reasons"); *United States v. Testan*, 424 U.S. 392, 399 (1976)(waiver "'cannot be implied but must be unequivocally expressed'") (citation omitted).  *Accord United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Fidelity Constr. Co.*, *supra* (court is not "authorized to award attorney fees against the United States by mere implication or by 'negative inference'").  Any waiver "must be 'construed strictly in favor of the sovereign,' . . . and not 'enlarge[d] . . . beyond what the language requires,'" *Ruckelshaus*, 463 U.S. at 685-86 (citations omitted), and ambiguities in the statute must be resolved in the United States' favor.  *See United States v. Williams*, 514 U.S. 527, 531 (1995); *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998).

Mr. Schulz "bears the burden of establishing" that his attorney-fee claim against the United States "fall[s] within an applicable waiver" of sovereign immunity.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)(citations omitted).  *Accord Lundeen v. Mineta*, 291 F.3d 300, 304 (5th Cir. 2002); *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983); *Gillett v. United States*, 233 F.Supp.2d 874, 884 (W.D. Mich. 2002).  Mr. Schulz, however, has not discharged that burden here.

The only statute that Mr. Schulz cites in support of his fee request is the Westfall Act, 28 U.S.C. § 2679, which is one of the provisions comprising the FTCA.  Mr. Schulz argues that he is entitled to fees from the United States because its agency (the Justice Department) wrongly refused to certify his "scope of employment" under the Westfall Act and thereby caused him to remain a

party in the case and to incur legal fees.  Mr. Schulz, however, identifies no *text* in the Westfall Act

that supports his claim or that waives the United States' sovereign immunity from fee awards.

Attorney's fees are not even mentioned in the Westfall Act.  Nowhere in that statute has Congress

"unequivocally expressed" any intention to waive sovereign immunity as to attorney-fee claims.  As

the Sixth Circuit and other courts have recognized, the FTCA in general does not waive immunity

from fee awards, *see Bergman*, *supra*; *Johnson v. Daley*, 339 F.3d 582, 588 (7th Cir. 2003);

*Anderson v. United States*, 127 F.3d 1190, 1191-92 (9th Cir. 1997); *Joe v. United States*, 772 F.2d

1535, 1537 (11th Cir. 1985), and the same is true of the Westfall Act.

There simply is nothing in the text of the Westfall Act that supplies the waiver Mr. Schulz

needs for his fee claim against the United States.  As Mr. Schulz points to no federal statute that

waives immunity for his claim,[7] his claim should be rejected.

Even if Mr. Schulz is correct that the Justice Department erred in refusing to certify his

---

[7]  The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, authorizes fee awards
against the United States in certain civil actions, but Mr. Schulz does not seek fees under that
statute and, in any event, it does not apply here.  Section § 2412(b) of the statute allows a
"prevailing party" in a civil action against the United States to seek fees from the United States,
and it makes the United States liable for fees "to the same extent that any other party would be
liable under the common law or under the terms of any statute which specifically provides for
such an award."  As mentioned, however, the United States is not a party here, and Mr. Schulz is
not a "prevailing party."  Moreover, § 2412(b) allows for the imposition of fees only when
authorized by a common-law doctrine or a statute, and no such doctrine or statute is applicable.
Thus, § 2412(b) provides no waiver for the claim asserted against the United States here.  The
same is true of § 2412(d)(1)(A), which provides that a "prevailing party" in a civil action against
the United States *shall* be awarded attorney's fees against the United States unless the United
States' position was "substantially justified" or "special circumstances make an award unjust."
By its express terms, however, this section does *not* apply to "cases sounding in tort."  As this
case is one "sounding in tort," § 2412(d)(1)(A) provides no waiver for the claim asserted against
the United States.  *See In re Turner*, 14 F.3d 637 (D.C. Cir. 1994).  Moreover, the United States
is not a party, Mr. Schulz has not "prevailed" against the United States, and the United States
was substantially justified in making its Westfall Act determination.  *See infra* n.9.

"scope of employment," the Westfall Act still does not entitle him to an award of attorney's fees. A fee award is simply *not* a remedy that Congress has provided in that statute to federal employees who are erroneously denied "scope of employment" certifications by the Justice Department.  The remedy that *is* provided in the statute–*i.e.*, the opportunity under 28 U.S.C. § 2679(d)(3) to petition for judicial certification–is a remedy that Mr. Schulz chose not to seek and that is now unavailable to him.  If Mr. Schulz wished to contest the Justice Department's scope determination, he was required to file his petition "at any time prior to trial."  § 2679(d)(3).  Had the Court granted the petition, the United States would have been substituted as a defendant for Mr. Schulz, and Mr. Schulz would have been dismissed with prejudice, as to all of Plaintiffs' claims except those based on the RICO statutes.  *See supra* n.2.  Immediately upon its substitution, the United States could have filed a motion seeking dismissal on the basis of sovereign immunity.  That motion would likely have been granted.[8]  Thus, if Mr. Schulz had timely and successfully invoked § 2679(d)(3), he might have secured his own dismissal as to the non-RICO claims some 18 months ago and avoided incurring any fees as to those claims at all.  The United States, moreover, would likely have secured its dismissal as well, whether immediately upon its substitution or soon thereafter.

Mr. Schulz, however, did *not* timely invoke § 2679(d)(3).  Rather than timely availing himself of the protections afforded by that statute, Mr. Schulz chose, instead, to proceed with the litigation with the aid of private counsel, to spend more than a year wrangling with the Plaintiffs over

---

[8] Sovereign immunity would have barred any claim against the United States, as Plaintiffs did not exhaust administrative remedies prior to filing suit, as required by 28 U.S.C. § 2675(a), *see McNeil v. United States*, 508 U.S. 106 (1993), and because Plaintiffs' claims were covered by one or more of the "exceptions" to the FTCA's waiver of immunity found in 28 U.S.C. § 2680.  *See*, *e.g.*, § 2680(h)(waiver of sovereign immunity does not extend to claims arising out of libel, slander, *etc.*).

12

discovery issues, and, ultimately, to settle the case.  Only now–when the parties have settled the case, and the case has been closed–does Mr. Schulz raise an issue regarding Westfall Act certification.  At this juncture, however, it is far too late in the day for Mr. Schulz to seek relief under § 2679(d)(3).  That statute required Mr. Schulz to file his certification petition "at any time before trial" and thus well before any settlement of the case and the entry of an order closing the case, approving the settlement,  and directing the entry of final judgment.

While Mr. Schulz may believe that he was wrongly denied a scope certification by the Justice Department, and that notions of fairness and equity now entitle him to fees, nothing in the text of the Westfall Act supports his request, and "fairness or policy reasons cannot by themselves waive sovereign immunity." *United States v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001)(quoting *United States v. 30,006.25 in U.S. Currency*, 236 F.3d 610, 614 (10th Cir. 2000)).  Moreover, it is clear that "the equities" in this case do not support Mr. Schulz's position.  Mr. Schulz could have sought to vindicate his asserted right to a scope certification by timely filing the petition prescribed by § 2679(d)(3).  He chose not to do so, however, and cannot recover fees now based on equitable notions, as "[e]quity will not aid those who have slept on their rights." *General Elec. Co. v. Sciaky Bros., Inc*., 304 F.2d 724, 727 (6th Cir. 1962).  Having failed to follow the procedures clearly outlined in § 2679(d)(3), Mr. Schulz cannot be heard now to complain about the attorney's fees that he most likely would *not* have incurred had he simply followed the rules.[9]

_____

[9]  Mr. Schulz relies on § 2679(d)(3) in requesting the Court to find that the conduct for which he was sued was within the scope of his employment.  Mr. Schulz seeks this finding not for the purpose of obtaining his dismissal from the suit and the United States' substitution as a defendant in his place (which is the only purpose of a scope certification under the Westfall Act).  Rather, he seeks the finding only because he believes it would serve as a vehicle for obtaining attorney's fees from the United States.  Mr. Schulz is mistaken, however, for the reasons set forth above.  Even if Mr. Schulz's alleged actions *were* within the scope of his employment, a finding

C.      Mr. Schulz's motion is untimely under Fed. R. Civ. P. 54(d).

Finally, this Court should deny Mr. Schulz's motion because it is untimely under Fed. R. Civ.

P. 54(d).  A motion for attorney's fees "must be filed no later than 14 days after entry of judgment"

unless a "statute or order of the court" provides otherwise.  FED. R. CIV. P. 54(D)(2)(B).  In this case,

as previously mentioned, this Court filed an order on April 15, 2003, *see* Dkt. No. 128, which closed

the case, approved the parties' settlement agreement, granted their request for entry of judgment, and

entered a permanent injunction against Mr. Schulz.  Over four months later (*i.e.*, on August 29, 2003,

---

to that effect would not entitle him to attorney's fees under the Westfall Act, as that statute
contains no waiver of sovereign immunity from attorney-fee claims.  Accordingly, the Court
need not resolve here whether the conduct for which Mr. Schulz was sued was within the "scope
of employment" under Pennsylvania law, as that issue can have no bearing on Mr. Schulz's
asserted entitlement to attorney's fees.

In any event, in his moving papers, Mr. Schulz does not support his assertion that he
acted in the scope of employment with any persuasive argument or citation to authority.  Mr.
Schulz was sued in this matter for making an unauthorized disclosure to the media of official
government information designated as law-enforcement sensitive.  Mr. Schulz does not credibly
explain how such conduct was within the scope of his employment with the United States Army,
and he ignores the ample decisional authority finding such conduct *beyond* the scope of
employment.  *See Nadler v. Mann*, 951 F.2d 301, 306 (11th Cir. 1992) ("An AUSA does not act
within the scope of his employment when he leaks information regarding a criminal investigation
to the news media.  An AUSA who leaks information to the press simply is not 'doing what his
employer contemplated.'"); *O'Ferrell v. United States*, 968 F. Supp. 1519, 1528 (M.D. Ala.
1997)(stating "this court probably lacks jurisdiction to consider claims against the United States
relating to use of the media, to the extent that they are based on allegations of leaks made by FBI
agents, because such leaks are likely not within the agents' scope of employment"); *Lawson v.
Abrams*, No. CV 84-4325 (RJD), 1988 WL 49244 *2 (E.D.N.Y. May 6, 1988) (prosecutors who
"disseminated false information about plaintiffs to media" and "disclosed Grand Jury
proceedings to a newspaper reporter" acted outside scope of employment).  Various state courts
also have found that employees exceeded the scope of employment when they have divulged
confidential information obtained on the job.  *See, e.g., Walker v. Scott County*, 518 N.W.2d 76,
77-79 (Minn. App. 1994)(deputy sheriff disclosed plaintiff's criminal records after obtaining
them from county computer); *Gottlieb v. Sullivan & Cromwell*, 609 N.Y.S.2d 344, 344-45
(App.Div. 2d Dep't 1994)(law firm employees sold firm information to individuals involved in
stock trades); *Knecht v. Vandalia Med. Ctr., Inc.*, 470 N.E.2d 230 (Ohio App. 1984)(medical
center employee divulged information about plaintiff's treatment).

*see* Dkt. No. 133), Mr. Schulz filed the instant motion for attorney's fees.

As Mr. Schulz filed his fee motion over four months after the Court's April 15 order, the motion is untimely under Rule 54(d)(2)(B) and should be denied on that basis alone.  Mr. Schulz offers no explanation for the delay in filing his motion and cites no statute or court order that would have allowed him to file his motion beyond the 14-day period prescribed by Rule 54(d).  Although the Court, in its April 15 order, "retain[ed] jurisdiction for a period of six (6) months within which *to consider* a motion for attorney's fees and expenses filed by defendant [*i.e.*, Mr. Schulz] against the United States," Dkt. No. 133, at 3, ¶ 7 (emphasis added), that order did not extend Mr. Schulz's time for *filing* any attorney-fee motion

### III. CONCLUSION

For the foregoing reasons, the United States of America respectfully requests that Mr. Schulz's Motion for Attorney's Fees, Expenses and Costs be denied and dismissed with prejudice.

Respectfully submitted,

PETER D. KEISLER                                    /s/
Assistant Attorney General, Civil Division    _____
TIMOTHY P. GARREN                          JEREMY S. BRUMBELOW
Director, Torts Branch, Civil Division          Trial Attorney, Torts Branch, Civil
Division
NICKI L. KOUTSIS                               Tel:  (202) 616-4330; Fax:  (202) 616-4314
Assistant Director, Torts Branch, Civil Division

FORREST CHRISTIAN                          UNITED STATES
Trial Attorney, Torts Branch, Civil Division   DEPARTMENT OF JUSTICE
Tel:  (202) 616-4326; Fax:  (202) 616-4314        P.O. Box 7146
                                                                   Washington, D.C. 20044-7146

Dated: September 26, 2003                     COUNSEL FOR THE UNITED STATES
                                                             OF AMERICA

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 26, 2003, I served a true copy of the foregoing by first class mail, postage pre-paid, addressed to counsel as follows, and by faxing a true copy of the foregoing to the counsel listed below:

*Counsel for Plaintiffs:*
Patrick M. McLaughlin
McLaughlin & McCaffrey
1350 Eaton Center
1111 Superior Ave.
Cleveland, OH  44114-2500
Fax:  216.623.0935

*Counsel for Defendant Schulz:*
Philip J. Weaver, Jr., Esq.
Smith, Marshall, LLP
500 National City – East Sixth Building
1965 East Sixth Street
Cleveland, OH 44114-2298
Fax:  216-781-9448

_____

Jeremy S. Brumbelow