UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAREDO NATIONAL BANCSHARES, INC. *et al.*, | ) ) ) | Case No.: 1:00 CV 2081 |
| Plaintiffs | ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| DONALD E. SCHULZ, | ) ) | |
| Defendant | ) | <u>ORDER</u> |

Now pending before the court is Defendant Donald E. Schulz's ("Schulz") Motion for Payment of Attorney's Fees, Expenses and Costs Against the United States of America (ECF No. 133). For the following reasons, Shulz's motion is denied.[1]

---

[1] This case was originally assigned to Judge Lesley Brooks Wells; however, on November 27, 2003, Judge Wells recused herself. The case was then reassigned to this court's docket.

## I. BACKGROUND

Plaintiffs Laredo National Bancshares, Inc.; the Laredo National Bank; and Gary G. Jacobs ("Plaintiffs") filed this action against Schulz on August 15, 2000, alleging that Schulz procured a draft of a National Drug Intelligence Center ("NDIC") report, which implicated Plaintiffs in illegal activity, and then leaked the draft report to the media. They asserted that Schulz violated state tort law; the Privacy Act, 5 U.S.C. § 552a; and the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 2962(c), 1964(c).

Plaintiffs' claims arose as a result of events that occurred during Schulz's employment with the United States Army. Pursuant to the Westfall Act, 28 U.S.C. § 2679, Schulz therefore requested that the United States Justice Department represent him in the case. On October 26, 2001, the Justice Department advised the Army that it had denied Schulz's representation request in light of the criteria set forth in 28 C.F.R. § 50.15. It also advised the Army that it could not certify that the conduct for which Schulz had been sued occurred in the scope of his employment and that under the Westfall Act, the United States thus could not be substituted as a defendant for Schulz.[2] Schulz was advised of the Justice Department's decision by letter dated November 16, 2001.

---

[2] Had the Justice Department certified that Schulz had been acting in the scope of his employment, then the United States would have been substituted as a defendant on certain of Plaintiffs' claims pursuant to 28 U.S.C. § 2679(d)(1). Insofar as those claims were concerned, the case would have proceeded in the same manner as any action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), and the action would have been "subject to the limitations and exceptions applicable to" FTCA actions. 28 U.S.C. § 2679(d)(4). The United States could therefore have asserted any defenses to which it was entitled, 28 U.S.C. § 2674, and also sought dismissal of the claims against it.

Although Schulz could have sought judicial review of the Justice Department's decision under 28 U.S.C. § 2679(d)(3), he did not do so. Instead, he hired a private attorney to defend the claims against him. Ultimately, in April of 2003, Plaintiffs and Schulz reached a settlement of all of Plaintiffs' claims. On April 15, 2003, Judge Wells entered an "Order Granting Joint Motion for Entry of a Judgment and Permanent Injunction and Order of Permanent Injunction and Judgment Entry" and closed the case. (ECF No. 128). The Order stated that judgment was entered against Schulz on certain of Plaintiffs' claims in the amount of $8 million, and it permanently enjoined him from distributing the draft NDIC report. (*Id.* at 1, 3). The Order further stated that the court would "retain jurisdiction for a period of six (6) months within which to consider a motion for attorney's fees and expenses filed by defendant against the United States." (*Id.* at 3).

On August 29, 2003, Schulz filed the instant motion for attorney's fees. In his motion, Schulz claims that the Justice Department erroneously refused to certify that the dissemination of the NDIC report was within the scope of his employment under the Westfall Act. He maintains that the United States should be ordered to reimburse him the amount of attorney's fees, expenses and costs that he incurred in defending this action and in bringing the instant motion.

## II. LAW AND ANALYSIS

### A. Timeliness of Schulz's Motion

The United States maintains that Schulz's motion for attorney's fees was not timely filed because it did not comply with the fourteen-day time limit for filing such a motion set forth in Fed. R. Civ. P. 54(d)(2)(B). While the United States has raised several strong arguments that Schulz's motion is untimely,

the court will not consider them because regardless of the timeliness of the motion, it fails on two other grounds.

### B. The United States Was Not A Party To This Action

Even assuming Schulz's motion was timely filed, it is without merit. The United States was not a party to this action, and Schulz has offered no support for the conclusion that this court has the power to award fees against a non-party. Indeed, as discussed below, the authority is to the contrary.

For example, in *Kentucky v. Graham*, 473 U.S. 159 (1985), the plaintiffs sued law enforcement officials for alleged constitutional violations under 42 U.S.C. § 1983. They also named the Commonwealth of Kentucky as a defendant in the action, but only for the purpose of obtaining attorney's fees in the event they were successful on their claims against the individual officers. The Commonwealth was dismissed from the case early in the litigation based on Eleventh Amendment immunity. Eventually, the plaintiffs and the officers settled. Thereafter, the plaintiffs filed a motion for attorneys' fees against the Commonwealth under § 1988, which was granted by the district court. The Sixth Circuit affirmed, but the Supreme Court reversed. In doing so, the Court noted that in determining who should bear liability for attorney fee awards, "the logical place to look for recovery . . . is to the losing party--the party legally responsible for relief on the merits. That is the party who must pay the costs of the litigation, *see* generally Fed. R. Civ. P. 54(d), and it is clearly the party who should also bear fee liability under § 1988." 473 U.S. at 164. As it further explained, "liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant." *Id.* at 165. As the Commonwealth was a non-party to the action and had not been prevailed against, the Court concluded that it could not be liable for a fee award to the plaintiffs.

Here, Schulz did not even prevail against the Plaintiffs, let alone the United States, which has never been a party to this lawsuit. The United States did not even have an opportunity to present a defense against Plaintiffs' claims. Under *Graham*, Schulz is therefore not entitled to a fee award against the United States.

Schulz asserts that if the court rules that the Justice Department erroneously determined that he was not acting in the scope of his employment when he disseminated the NDIC report, then he will be the prevailing party as against the United States. Even assuming this were true (which still ignores the fact that the United States was never a party to this now-terminated case), Schulz cannot challenge the Justice Department's determination at this juncture. Under 28 U.S.C. § 2679(d)(3), Schulz could have *"at any time before trial* petition[ed] the court to find and certify that [he] . . . was acting within the scope of his employment." 28 U.S.C. § 2679(d)(3) (emphasis added). Schulz did not take advantage of this opportunity. Instead, he chose to hire his own private attorney to defend the claims against him. A motion for attorney's fees, filed after Schulz has settled all of the claims in the case, is not the proper way to challenge the Justice Department's decision under the Westfall Act. The court will therefore not address the merits of Schulz's arguments.

Accordingly, Schulz's motion for attorney's fees is denied as the United States was never a party to this suit and has not been found liable on the merits of any claim.

### C. The United States Is Entitled To Sovereign Immunity

Lastly, the doctrine of sovereign immunity bars Schulz's claim for fees. The United States is immune from suit unless it has consented to be sued. *See, e.g., United States v. Sherwood*, 312 U.S. 584, 586 (1941). Therefore, "[e]xcept to the extent it has waived its immunity, the Government is immune

- 5 -

from claims for attorney's fees." *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685 (1983). Waivers of immunity "must be express, clear and unequivocal," *Reed v. Reno*, 146 F.3d 392, 398 (6th Cir. 1998), and courts must construe them "strictly in favor of the sovereign," *McMahon v. United States*, 342 U.S. 25, 27 (1951).

Schulz argues that the United States is not immune from his claim for attorney's fees because it waived its immunity in 28 U.S.C. § 2412(b) and (d)(1)(A), the Equal Access to Justice Act ("EAJA"). The EAJA does not apply to the instant action. In order to be entitled to fees from the United States under either § 2412(b) or § 2412(d)(1)(A), the party seeking fees must be a prevailing party in a civil action against the United States. As already noted above, Schulz was not a prevailing party in this case, either as against Plaintiffs or the United States, a non-party. In addition, by its express terms, § 2412(d)(1)(A) does not apply to "cases sounding in tort." As this is a case sounding in tort, § 2412(d)(1)(A) does not provide a waiver of immunity.

Because Schulz has failed to establish that the United States waived sovereign immunity as to his claim for attorney's fees, his motion for fees is barred.

## III. CONCLUSION

Schulz's Motion for Payment of Attorney's Fees, Expenses and Costs Against the United States of America (ECF No. 133) is denied because the United States was not a party to this action and because it is barred by the doctrine of sovereign immunity.

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

January 16, 2004